2005 ND 12

**CITY OF BISMARCK, Plaintiff and Appellee**

v.

**Mitchell BOSCH, Defendant and Appellant.**

**No. 20040157.**

Supreme Court of North Dakota.

Jan. 19, 2005.

Rehearing Denied Feb. 16, 2005.

Paul H. Fraase (on brief), Assistant City Attorney, Bismarck, N.D., for plaintiff and appellee.

Michael Ray Hoffman, Bismarck, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Mitchell David Bosch appealed from a conviction entered upon a jury verdict finding him guilty of driving under the influence of alcohol. We hold the trial court did not abuse its discretion in admitting the test results of an Intoxilyzer test, and we affirm.

## I

[¶ 2] On November 26, 2003, Bosch was arrested for driving under the influence of alcohol. He was taken to the Bismarck Police Department, where he consented to an Intoxilyzer test. The test indicated Bosch's blood alcohol level was .15 percent.

[¶ 3] Bosch was charged with DUI. He pled not guilty and a jury trial was held on May 13, 2004. At the trial, Bismarck police officer, Allen Nass, testified that he was in charge of the standard solution used for Bosch's Intoxilyzer test. A directive by the State Toxicologist advised that a standard test solution "may be used

on up to 50 Intoxilyzer 5000 tests." Bosch's attorney objected to testimony by Nass about the number of tests conducted with the standard solution:

Q. [T]he police department keeps a record of the tests that are conducted on each standard solution?

A. Correct.

Q. And you have that in front of you?

A. Yes, I do.

Q. And you're able to look at that document and determine how many tests were run on this specific standard solution?

A. Yes, I am.

MR. HOFFMAN: Judge, for the record, this is my objection.

THE COURT: Okay.

In chambers counsel explained his objection:

[M]y objection goes to Form 120–I, in that it contains information which would be hearsay and which Mr. Bosch does not have the ability to cross-examine or to confront witnesses.

The items specifically filled in by Bismarck police officers who do these tests, they are done independent of Officer Nass, so he did testify that he was not directly involved in these tests and was not present when the tests were conducted. And, therefore, I submit that all the information contained on Form 120–I would be, like I said, hearsay, no ability to cross-examine. Officer Nass was not involved in any of that information.

. . . .

It is offered to prove the truth of the matter asserted, because they are trying to prove that Plaintiff's Exhibit 4, the foundational document for the Standard Solution 496 is met. And so we're being given information that we have no ability to test. I mean, for example, there could have been tests run that weren't written down. There might have been there is no way for us to test that information. It's presented to us like out of the blue, and we can't test it. So it is hearsay. It is offered to prove the truth of the matter asserted, and we don't have the right or the ability to cross-examine it. It's just there. And that's the objection.

The trial court overruled Bosch's objection, and Nass testified that the standard solution had been used for 25 tests prior to its use for Bosch's Intoxilyzer test. The jury found Bosch guilty and he appealed.

## II

[¶ 4] On appeal, Bosch asserts the trial court abused its discretion in admitting the Intoxilyzer test results over Bosch's "foundation, hearsay and confrontation objections." In his appellate brief, Bosch explains the nature of his objections:

Plaintiff's Exhibit 4, the Standard Solution Analytical Report (Solution No. 496), states in relevant part, "Each bottle of solution may be used on up to 50 Intoxilyzer 5000 tests or forty-five (45) days, which ever comes first." It is Bosch's contention that this foundational requirement of Plaintiff's Exhibit 4 was not adequately and properly shown, and, therefore, foundation for Plaintiff's Exhibit 5, the test result, was lacking.

[O]ver Bosch's hearsay and confrontation objections, Nass was allowed to testify he looked at the document, counted the number of tests run on Standard Solution No. 496, and there were only 25 tests by the time of Bosch's test. . . . Plaintiff's Exhibit 4 was also filed . . . and clearly appears to be a method approved by the state toxicologist under NDCC 39–20–07(5) and (6)(c). Therefore, the requirement of Plaintiff's Ex-

hibit 4 that "Each bottle of solution may be used on up to 50 Intoxilyzer 5000 tests" must scrupulously be met unless the state toxicologist testifies at the trial. Here, the state toxicologist did not so testify.

[¶ 5] Evidence of the amount of alcohol, drugs, or a combination thereof, in a person's blood as shown by a chemical analysis of the blood, breath, saliva, or urine is admissible under N.D.C.C. § 39-20-07, which provides, in relevant part:

5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. . . .

6. . . . . Upon approval of the methods or devices, or both, required to perform the tests and the persons qualified to administer them, the state toxicologist shall prepare and file written record of the approval with the director and the recorder in each county, unless the board of county commissioners designates a different official, and shall include in the record:

a. An annual register of the specific testing devices currently approved, including serial number, location, and the date and results of last inspection.

b. An annual register of currently qualified and certified operators of the devices, stating the date of certification and its expiration.

c. The operational checklist and forms prescribing the methods currently approved by the state toxicologist in using the devices during the administration of the tests.

The material filed under this section may be supplemented when the state toxicologist determines it to be necessary, and any supplemental material has the same force and effect as the material that it supplements.

[¶ 6] Under N.D.C.C. § 39-20-07(5), the results of chemical analysis to determine blood alcohol content must be received in evidence if the test sample was properly obtained, and the test was fairly administered and shown to have been performed in accordance with methods and devices approved by the State Toxicologist. *Henderson v. Director, N.D. Dep't of Transp.*, 2002 ND 44, ¶ 16, 640 N.W.2d 714. Absent testimony by the State Toxicologist, a foundational requirement necessary to show fair administration of a breathalyzer test and admissibility of the test results is a showing that the test was administered in accordance with the approved methods filed with the clerk of the district court. *Ringsaker v. Director, N.D. Dep't of Transp.*, 1999 ND 127, ¶ 8, 596 N.W.2d 328.[1] The purpose of N.D.C.C. § 39-20-07 is to ease the requirements for the admissibility of chemical test results while assuring that the test upon which the results are based is fairly administered. *Lee v. North Dakota Dep't of Transp.*, 2004 ND 7, ¶ 10, 673 N.W.2d 245. Wheth-

1. Under N.D.C.C. § 39-20-07(6) the State Toxicologist must file the "written record of the approval" with "the recorder in each county, unless the board of county commissioners designates a different official." Here, the State Toxicologist filed all documents with the Burleigh County State's Attorney, who was designated by the board of county commissioners to receive and hold the documents.

er an Intoxilyzer test has been properly administered can be determined by proving that the method approved by the State Toxicologist has been scrupulously followed. *Johnson v. North Dakota Dep't of Transp.*, 2004 ND 59, ¶ 12, 676 N.W.2d 807. However, scrupulous compliance does not mean hypertechnical compliance. *Id.*

■ [¶ 7] The State Toxicologist filed with the state's attorney the list of certified chemical test operators, the list of approved chemical testing devices, and the approved method to conduct breath tests with the Intoxilyzer 5000 KB–EP, which was used to conduct Bosch's breathalyzer test. These documents were admitted into evidence without objection by Bosch. The State Toxicologist also filed with the state's attorney a standard solution analytical report stating that the standard solution used for Bosch's test was in the required concentration and was approved for use in testing. In that report, the State Toxicologist instructed "[e]ach bottle of solution may be used on up to 50 Intoxilyzer 5000 tests or forty-five (45) days, which ever comes first." Bosch's objection to the trial court's admission of the Intoxilyzer test results is that the State failed to provide adequate proof that the standard solution used for Bosch's test had not been used more than 50 times. Although Officer Nass testified that the standard solution had only been used 25 times, Bosch objects that Nass did not have personal knowledge of each test conducted with the standard solution and, therefore, could not offer credible evidence that the standard solution had only been used that many times. Bosch asserts that without adequate proof of this fact, the State has failed to prove fair administration of the test, and the trial court, therefore, abused its discretion in admitting the test results.

[¶ 8] But, there is nothing in N.D.C.C. § 39–20–07 which requires, for fair administration of a breath test, that a test solution cannot be used for more than 50 tests, unless that requirement is made a part of the approved method for conducting tests. The approved method, filed by the State Toxicologist, sets forth with specificity the requirements for insuring that a test is conducted fairly and accurately. There is no requirement in the State Toxicologist's approved method for conducting breathalyzer tests which requires the standard solution not be used more than 50 times. The approved method requires running a test sequence that includes a "standard solution test" to insure that the standard solution is within the required concentration for accurate testing. The standard solution used for Bosch's test fell within the accepted parameters of the standard solution test. Bosch does not argue the solution was defective or not within acceptable concentration levels. There is no reference within the approved method limiting the number of tests that can be conducted with a standard solution or indicating that using a solution in excess of 50 tests affects the scientific accuracy of the test results.

■ [¶ 9] The approved method states "[w]hen the test is conducted according to this method, it is considered as fairly administered and the result obtained is scientifically accepted as accurate." The State Toxicologist filed a standard solution analytical report verifying the standard solution used for Bosch's test was quantitatively tested and met the required concentration for accurate testing. There is nothing in the statute or the State Toxicologist's approved method limiting the number of tests per bottle of solution as a prerequisite to fair administration of the test. We will not infer from the advisory statement in the analytical report that using a

standard solution for no more than 50 tests is a necessary part of the approved method for proving fair administration of a test. For a process to be a necessary part of the approved method, the State Toxicologist must expressly include it in the approved methodology and make it a part of the requirement for fair administration. The State Toxicologist has not expressly made the "up to 50 tests" directive a part of the approved method, and we will not infer that it is a requirement for fair administration of a test.

[¶ 10] Although we understand the confusion created by the State Toxicologist's filing, and the prosecution's introduction into evidence, of a document entitled "analytical report" and containing a statement such as the one at issue here, the term "approved method" has become a word of art. *See, e.g., Johnson,* 2004 ND 59, ¶ 11, 676 N.W.2d 807; *Lee,* 2004 ND 7, ¶ 11, 673 N.W.2d 245; *Moser v. North Dakota State Highway Comm'r,* 369 N.W.2d 650, 653 (N.D.1985); *State v. Schneider,* 270 N.W.2d 787, 791 (N.D. 1978). As such, it refers to the document filed by the State Toxicologist under N.D.C.C. § 39–20–07(5) and (6) showing the "operational checklist and forms prescribing the methods currently approved by the State Toxicologist in using the devices during the administration of the tests."

[¶ 11] Under N.D.C.C. § 39–20–07(6), the State Toxicologist may supplement material filed under that section, including the register of approved testing devices, the register of qualified certified operators, and the operational checklist and forms. The supplemental materials have the "same force and effect as the material that it supplements." Unless, however, the State Toxicologist includes in the approved method which is filed with the appropriate entity a specific reference to a supplemental filing, stating that it is a required part of the approved method for fair administration of a test, we will not infer that a filed document is part of the foundational requirement for proving fair administration. Consequently, we conclude the analytical report and the directive therein that a standard solution may be used for up to 50 tests is not a part of the approved method and proof of that fact is not a prerequisite to showing fair administration of the test or to admission of the test results.

[¶ 12] We conclude the prosecution in this case established a prima facie foundation for admission of the breathalyzer test results. Evidence that more than 50 tests were conducted with the standard solution used for Bosch's test, if it exists, may constitute evidence discrediting the test results, thereby affecting the weight to be given to those results, but not their admissibility. *See State v. Zimmerman,* 516 N.W.2d 638, 642 (N.D.1994). We hold, therefore, the district court did not abuse its discretion in admitting the test results.

### III

[¶ 13] Bosch argues that his constitutional right of confrontation was violated when Officer Nass testified to the number of uses of the standard solution which were conducted by other persons, not Officer Nass, and those persons were neither available nor required to testify. Having determined that the number of tests conducted with the standard solution is not a foundational requirement for showing fair administration of the test for purposes of admitting the test results, we further conclude Bosch's Confrontation Clause argument is irrelevant.

[¶ 14] The judgment of conviction is affirmed.

[¶ 15] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.