2013 ND 36

**Timothy Allen MEES, Petitioner and Appellee**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

**No. 20120348.**

Supreme Court of North Dakota.

Feb. 28, 2013.

Tyrone J. Turner, Bismarck, N.D., for petitioner and appellee.

Michael T. Pitcher, Office of Attorney General, Bismarck, N.D., for respondent and appellant.

MARING, Justice.

[¶ 1]   The North Dakota Department of Transportation appeals from the district court's judgment reversing the administrative hearing officer's decision to suspend Timothy Mees's driving privileges for ninety-one days for driving under the influence of alcohol.  We conclude a reasoning mind reasonably could have concluded the hearing officer's finding that the officer who administered the Intoxilyzer ascertained that Mees did not have anything to eat, drink, or smoke for twenty minutes prior to the Intoxilyzer test is supported by the weight of the evidence on the entire record.  Therefore, we reverse the district court's judgment and reinstate the hearing officer's decision to suspend Mees's driving privileges.

## I

[¶ 2] On January 29, 2012, Officer Mark Otterness arrested Mees for driving under the influence and transported Mees to the Bismarck Police Department. On the Intoxilyzer Test Record and Checklist, Officer Mitchell Wardzinski certified he followed the approved method of collection and the twenty-minute wait period was ascertained. The Intoxilyzer test revealed Mees's alcohol concentration was .125 percent. Officer Otterness issued a report and notice to Mees following the completion of the Intoxilyzer test.

[¶ 3] Mees requested and received an administrative hearing. Officer Otterness testified at the administrative hearing, but Officer Wardzinski did not testify. Officer Otterness testified that Mees provided an on-site breath sample. Officer Otterness testified that prior to his administration of an on-site breath test, another officer at the scene had Mees clear his mouth of chewing tobacco, and Officer Otterness waited an additional three minutes before administering the on-site breath test.

[¶ 4] Officer Otterness also testified that after the result of the on-site screening test came back with an alcohol concentration of .125 percent, he arrested Mees for driving under the influence of an alcoholic beverage, placed him in handcuffs, and placed him in the backseat of his patrol car. Officer Otterness arrested Mees at 1:03 a.m. He then transported Mees to the police department arriving at 1:08 a.m. or 1:10 a.m. He testified that he took Mees directly to the booking room and, while filling out paperwork, Mees sat directly in front of him. He also testified that, while in the booking room, Mees did not place anything in his mouth. Officer Otterness then testified that he turned Mees over to Officer Wardzinski who administered the Intoxilyzer test. Officer Otterness testified that Officer Wardzinski commenced administering the Intoxilyzer test at 1:25 a.m. The result of the Intoxilyzer test was .125 percent alcohol concentration.

[¶ 5] At the hearing, the Intoxilyzer Test Record and Checklist was offered and received into evidence over Mees's objection. Mees objected to the admission of the Intoxilyzer Test Record and Checklist, arguing that Officer Wardzinski could not have ascertained whether Mees had anything to eat, drink, or smoke for twenty minutes prior to the administration of the test based on the time Mees arrived at the police department.

[¶ 6] At the conclusion of the hearing, the hearing officer issued her findings of fact, conclusions of law, and decision to suspend Mees's driving privileges for ninety-one days. In reaching this decision, the hearing officer found the "Intoxilyzer test[ ] was done in accordance with the [S]tate [T]oxicologist's approved method."

[¶ 7] Mees appealed to the district court. The district court reversed the hearing officer's decision, concluding Officer Wardzinski could not have ascertained whether Mees had anything to eat, drink, or smoke for twenty minutes prior to the administration of the Intoxilyzer test. Therefore, the approved method was not followed. The Department appealed the district court's decision.

[¶ 8] On appeal, the Department argues the district court erred in reversing the hearing officer's suspension of Mees's driving privileges. The Department argues the Intoxilyzer Test Record and Checklist was prima facie evidence that the test was done in accordance with the State Toxicologist's approved method and Mees failed to rebut this presumption.

## II

[¶ 9] We review a decision to suspend a person's driving privileges un-

der N.D.C.C. ch. 28–32, the Administrative Agencies Practice Act. *Thorsrud v. N.D. Dep't of Transp.*, 2012 ND 136, ¶ 7, 819 N.W.2d 483. "The review is limited to the record before the administrative agency." *Buchholtz v. N.D. Dep't of Transp.*, 2008 ND 53, ¶ 9, 746 N.W.2d 181 [hereinafter *"Buchholtz I "*]. We will not, however, make independent findings or substitute our judgment. *Id.* We will only determine "whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record." *Id.* An administrative agency's decision must be affirmed unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46. "Questions of law are fully reviewable on appeal." *Buchholtz I,* at ¶ 9.

## III

■ [¶ 10] Chapter 39–20, N.D.C.C., governs the admissibility of an Intoxilyzer test result. *Buchholtz I,* 2008 ND 53, ¶ 10, 746 N.W.2d 181 (citing *Johnson v. N.D. Dep't of Transp.,* 2004 ND 59, ¶ 11, 676 N.W.2d 807). Under N.D.C.C. § 39–20–07(5), the results of a chemical test must be received into evidence if shown that the test has been fairly administered:

The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee. . . .

[¶ 11] Proof of fair administration may be established through the introduction of the Intoxilyzer Test Record and Checklist:

At a hearing under this section, the regularly kept records of the director may be introduced. Those records establish prima facie their contents without further foundation. For purposes of this chapter, the following are deemed regularly kept records of the director: . . . a certified copy of the checklist and test records received by the director from a certified breath test operator.

N.D.C.C. § 39–20–05(4); *see also Thorsrud,* 2012 ND 136, ¶ 10, 819 N.W.2d 483 (holding that "once the Intoxilyzer Test Record and Checklist was admitted into evidence, the Department 'established prima facie its contents without further foundation,' " thereby establishing fair administration); *Salter v. Hjelle,* 415 N.W.2d 801, 803 (N.D.1987) (recognizing that "[u]nder

[N.D.C.C.] § 39–20–07, certified copies of the operational checklist and listings of approved chemical testing devices and certified operators are cumulatively sufficient to prove fair administration").

■■■ [¶ 12] The Intoxilyzer Test Record and Checklist is, therefore, presumed to show fair administration of the approved method until the defendant shows that "'the evidence as a whole clearly negates the presumed fact.'" *Thorsrud*, at ¶ 10 (quoting *State v. Zimmerman*, 516 N.W.2d 638, 642 (N.D.1994)). The defendant "'must do more than raise the mere possibility of error.'" *Thorsrud*, at ¶ 10 (quoting *Berger v. State Highway Comm'r*, 394 N.W.2d 678, 688 (N.D.1986)). A defendant may either rebut the presumption of fair administration by proving a lack of fair administration despite compliance with the approved method or by showing a departure from the approved method. *Thorsrud*, at ¶ 10.

■■■ [¶ 13] We have said, "'observing' the subject is not the only manner of 'ascertaining' that the subject had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample." *Buchholz v. N.D. Dep't of Transp.*, 2002 ND 23, ¶ 10, 639 N.W.2d 490. If a fact-finder can draw reasonable inferences from the evidence and conclude the subject could not have eaten, drank, or smoked, the twenty-minute wait requirement has been met. *Buchholtz I*, 2008 ND 53, ¶ 12, 746 N.W.2d 181 (citing *Johnson*, 2004 ND 59, ¶ 18, 676 N.W.2d 807).

[¶ 14] In *Johnson*, 2004 ND 59, ¶ 18, 676 N.W.2d 807, this Court held that although the officer did not continuously observe Johnson for twenty minutes prior to the collection of the breath sample, it was reasonable to conclude that a person whose hands were handcuffed behind his back and who had remained in police custody, could not have had anything to eat, drink, or smoke during that time frame. The hearing officer relied on the officer's testimony to make the reasonable inference that the twenty-minute wait period was ascertained:

> The officer testified that five minutes before administering the S–D2 test, he checked Johnson's mouth. After the S–D2 test, Johnson was placed under arrest, his hands were cuffed behind his back, and he was placed in the backseat of the patrol car. Johnson was arrested at 1:32 a.m.; therefore, the officer checked Johnson's mouth at approximately 1:27 a.m. The Intoxilyzer test was conducted at 1:51 a.m. During those twenty-four minutes, Johnson's hands were cuffed behind his back, and he was transported in the back of the patrol car to the corrections center. After they arrived at the corrections center at approximately 1:35 a.m., the officer observed Johnson until the Intoxilyzer test was administered.
>
> Although the officer testified he did not ascertain until after arriving at the corrections center that Johnson had nothing to eat, drink, or smoke, the testimony is clear that Johnson's mouth was checked prior to his taking the S–D2 test. The testimony is also clear that Johnson had nothing to eat, drink, or smoke between the time of the S–D2 test and the administration of the Intoxilyzer test. Regardless of when the officer said he began to ascertain the time, the evidence supports the hearing officer's finding that the twenty-minute waiting period had been observed by the time the officer administered the Intoxilyzer test.

2004 ND 59, ¶¶ 16–17, 676 N.W.2d 807.

[¶ 15] At the administrative hearing, Mees argued the Intoxilyzer test was not fairly administered. He argued, based on Officer Otterness's testimony, Officer

Wardzinski could not have ascertained whether Mees had anything to eat, drink, or smoke for twenty minutes prior to the Intoxilyzer test. Officer Otterness testified that Mees removed his chewing tobacco three minutes prior to the administration of the on-site breath test. After the on-site breath test, Officer Otterness arrested Mees, handcuffed him, and place him in the back of his patrol car. Mees was arrested at 1:03 a.m. Therefore, Mees's mouth was cleared at approximately 1:00 a.m. Officer Otterness then transported Mees to the police department arriving at 1:08 a.m. or 1:10 a.m. Officer Otterness took Mees directly to the booking room. Officer Otterness testified that he began filling out paperwork while Mees sat directly in front of him, and he observed that Mees did not place anything in his mouth. He then asked Officer Wardzinski to administer the Intoxilyzer test, and Officer Wardzinski began administering the Intoxilyzer test at 1:25 a.m. Therefore, whether utilizing 1:00 a.m., when Mees's mouth was cleared, or 1:03 a.m., when the on-site breath test was administered, these facts, like those in *Johnson*, would permit a reasonable person to reasonably infer the twenty-minute wait period was ascertained before the Intoxilyzer test was administered, and the presumption of fair administration was not rebutted.

## IV

[¶ 16] We conclude a reasoning mind reasonably could have concluded the Intoxilyzer test was fairly administered in accordance with the approved method based on the weight of the evidence on the entire record. Therefore, we reverse the judgment of the district court and reinstate the hearing officer's decision suspending Mees's driving privileges.

[¶ 17] GERALD W. VANDE WALLE, C.J., GARY H. LEE, D.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 18] The Honorable GARY H. LEE, D.J., sitting in place of SANDSTROM, J., disqualified.