2013 ND 104

**Jay OLSON, Petitioner and Appellee**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

**No. 20120352.**

Supreme Court of North Dakota.

June 19, 2013.

Jeff L. Nehring, Williston, ND, for petitioner and appellee.

Michael T. Pitcher, Office of Attorney General, Bismarck, ND, for respondent and appellant.

KAPSNER, Justice.

[¶ 1] The North Dakota Department of Transportation appeals from a district court judgment reversing an administrative hearing officer's decision to suspend Jay Olson's driving privileges for 180 days for driving under the influence of alcohol. We conclude a reasoning mind reasonably could have concluded the hearing officer's finding that Olson did not have anything to eat, drink, or smoke during the twenty minutes before the Intoxilyzer test is supported by the weight of the evidence on the entire record. We reverse the district court's judgment and reinstate the administrative suspension of Olson's driving privileges.

I

[¶ 2] In December 2011, Officer Daniel Blood arrested Olson for driving under the influence of alcohol. After conducting a series of standardized and non-standardized field sobriety tests, Officer Blood handcuffed Olson and transported him to the McKenzie County Law Enforcement Center ("law enforcement center"). Officer Blood then administered an Intoxilyzer test, which indicated Olson's alcohol concentration was .258 percent. Officer Blood certified on the Intoxilyzer Test Record and Checklist that he followed the approved method of collection and the required twenty-minute waiting period was ascertained before administering the test. Officer Blood issued a Report and Notice to Olson indicating the intent to suspend his driving privileges.

[¶ 3] Olson requested an administrative hearing, which was held in January 2012. Olson argued that Officer Blood did not properly administer the Intoxilyzer test because he did not ascertain Olson's chewing tobacco had been removed from his mouth for at least twenty minutes before the test. At the hearing, the Intoxilyzer Test Record and Checklist was offered and received into evidence without Olson's objection. Officer Blood testified that he stopped Olson's vehicle after seeing it

"sway back and forth" and "cross[ ] the ... white line." After stopping Olson, Officer Blood conducted a series of field sobriety tests. Officer Blood testified that he had Olson remove the chewing tobacco from his mouth before starting the field sobriety tests. Olson failed the tests. Officer Blood testified that at 12:17 a.m. he administered a portable S–D5 Breathalyzer test, which Olson also failed. At 12:18 a.m., Olson was arrested and transported to the law enforcement center.

[¶ 4] Officer Blood testified that he administered the Intoxilyzer test according to the approved method and signed and certified a copy of the test record. On cross-examination, Officer Blood testified that he initiated the Intoxilyzer test at 12:30 a.m., but he could not recall what time he started the initial field sobriety tests. When asked how long it took to administer the field sobriety tests, Officer Blood testified "I would estimate, ah, nine to ten minutes, as my average time." After the cross-examination, the hearing officer asked Officer Blood to clarify how long the field sobriety tests took, and Officer Blood twice stated that the tests took about ten minutes.

[¶ 5] At the conclusion of the hearing, the hearing officer issued his findings of fact, conclusions of law, and decision to suspend Olson's license for 180 days. In reaching his decision, the hearing officer found that Officer Blood began administering the Intoxilyzer test at 12:30 a.m., and the S–D5 Breathalyzer test was "administered by Blood at 12:17 a.m...." The hearing officer further found that the field sobriety tests, which were conducted prior to the S–D5, "took a total of about 10 minutes." Accordingly, the hearing officer found, "a 20 minute waiting period had been ascertained since the tobacco chew was removed at about 12:07 a.m., [ten minutes] before the other testing." The hearing officer concluded the "chemical breath test was fairly administered."

[¶ 6] Olson appealed the suspension to district court. The court reversed the hearing officer's decision, holding "[t]he arresting officer did not ascertain a twenty minute waiting period as required by the Approved Method to Conduct Breath Tests with the Intoxilyzer 8000." Because the approved method was not followed, the district court held, "the Hearing Officer's reliance on the [I]ntoxilyzer 8000 test result to suspend the Petitioner was in error." The Department appeals.

## II

[¶ 7] This Court reviews a decision to suspend a person's driving privileges under N.D.C.C. ch. 28–32, the Administrative Agencies Practice Act. *Mees v. N.D. Dep't of Transp.*, 2013 ND 36, ¶ 9, 827 N.W.2d 345 (citing *Thorsrud v. Director, N.D. Dep't of Transp.*, 2012 ND 136, ¶ 7, 819 N.W.2d 483). "When reviewing an administrative agency's decision, we determine 'only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record.' " *Thorsrud*, at ¶ 7 (quoting *Buchholtz v. Director, N.D. Dep't of Transp.*, 2008 ND 53, ¶ 9, 746 N.W.2d 181). In reviewing an agency decision, "[w]e will not ... make independent findings or substitute our judgment." *Mees*, at ¶ 9 (citation omitted). The district court, under N.D.C.C. § 28–32–46, and this Court, under N.D.C.C. § 28–32–49, must affirm an agency's order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

"Questions of law are fully reviewable on appeal." *Buchholtz,* at ¶ 9 (citation omitted).

### III

■ [¶ 8] "Chapter 39–20, N.D.C.C., governs the admissibility of an Intoxilyzer test result." *Mees,* 2013 ND 36, ¶ 10, 827 N.W.2d 345 (citation omitted). The results of a chemical test must be received into evidence if shown that the test has been fairly administered:

The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by

the director of the state crime laboratory or the director's designee. . . .

N.D.C.C. § 39–20–07(5).[1]

[¶ 9] Proof of fair administration may be established through the introduction of the Intoxilyzer Test Record and Checklist:

At a hearing under this section, the regularly kept records of the director and state crime laboratory may be introduced. Those records establish prima facie their contents without further foundation. For purposes of this chapter, the following are deemed regularly kept records of the director and state crime laboratory: . . . a certified copy of the checklist and test records received by the director from a certified breath test operator. . . .

N.D.C.C. § 39–20–05(4); *see also Mees,* 2013 ND 36, ¶ 11, 827 N.W.2d 345.

■ [¶ 10] Once the Intoxilyzer Test Record and Checklist is admitted into evidence, the Department has established its contents, prima facie, without further foundation. *Thorsrud,* 2012 ND 136, ¶ 10, 819 N.W.2d 483 (quotation omitted). "A defendant may either rebut the presumption of fair administration by proving a lack of fair administration despite compliance with the approved method or by showing a departure from the approved method." *Mees,* 2013 ND 36, ¶ 12, 827 N.W.2d 345 (citing *Thorsrud,* at ¶ 10). However, "[a] defendant must do more than raise the mere possibility of error." *Thorsrud,* at ¶ 10 (quotation omitted).

[¶ 11] The approved method for the device Officer Blood utilized, the Intoxilyzer 8000, requires that "[b]efore proceeding, the operator must ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the

---

**1.** The 2013 Legislative Assembly recently amended Chapter 39–20 by passing House Bill 1302. We consider the previous version of the statutes, however, because this case predates the amendments.

collection of the breath sample by answering the question '20 Minute Wait?.'" *Approved Method to Conduct Breath Tests with the Intoxilyzer 8000,* dated July 15, 2009 (rev. Jan. 3, 2011).

[¶ 12] This Court has held that observing a defendant is not the only manner of ascertaining that the driver had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample. *Mees,* 2013 ND 36, ¶ 13, 827 N.W.2d 345 (quotations and citation omitted). *See also Buchholz v. N.D. Dep't of Transp.,* 2002 ND 23, ¶¶ 10–12, 639 N.W.2d 490 (holding that observing an individual is not the only manner for an officer to ascertain that the individual had nothing to eat, drink, or smoke within twenty minutes before the collection of the breath sample); *Johnson v. N.D. Dep't of Transp.,* 2004 ND 59, ¶ 18, 676 N.W.2d 807 (holding that despite a lack of testimony that the officer had constantly observed the defendant, it is not unreasonable for the fact-finder to infer that a person who was handcuffed behind his back and remained in police custody would have had nothing to eat, drink, or smoke during that time); *State v. Stroh,* 2011 ND 139, ¶ 15, 800 N.W.2d 276 (holding the court reasonably inferred the officer ascertained the twenty-minute waiting period where the court was left with no evidence of what happened to the can of chewing tobacco and the defendant did not testify on this point).

[¶ 13] To comply with the approved method, Officer Blood had to ascertain Olson had nothing to eat, drink, or smoke within twenty minutes of administering the Intoxilyzer test at the law enforcement center.

## IV

[¶ 14] The Department argues "[t]he hearing officer's finding that the twenty minute waiting period was established is not against the greater weight of the evidence" and Olson failed to "contradict[ ] the prima facie evidence that the twenty-minute waiting period was ascertained."

[¶ 15] At the hearing, the Department offered the Intoxilyzer Test Record and Checklist into evidence without Olson's objection. The Record and Checklist contained Officer Blood's indication that the twenty-minute waiting period was ascertained, and he signed and certified that: "I followed the Approved Method and the instructions displayed by the Intoxilyzer in conducting this test." Under N.D.C.C. § 39–20–05(4), once the Record and Checklist was admitted into evidence, the Department established prima facie evidence Officer Blood used the approved method and ascertained the twenty-minute waiting period. *See also Thorsrud,* 2012 ND 136, ¶ 10, 819 N.W.2d 483.

[¶ 16] Olson argues the "Department's prima facie evidence of complying with the approved method was rebutted." Specifically, he argues Officer Blood did not comply with the approved method because Officer Blood merely estimated how long it took to conduct the field sobriety testing. As a result, Olson argues, Officer Blood did not ascertain that twenty minutes had passed after Olson removed his chewing tobacco and "no testimony curing the defect occurred in this case."

[¶ 17] Officer Blood testified, and the Intoxilyzer Record and Checklist confirmed, the Intoxilyzer test was initiated at 12:30 a.m., requiring Officer Blood to ascertain the chewing tobacco had been removed from Olson's mouth by 12:10 a.m. Officer Blood testified he administered the S–D5 at 12:17 a.m., immediately after the field sobriety tests, and Olson removed the chewing tobacco "just prior" to the field sobriety tests. However, Officer Blood did not recall when he started the field sobriety tests. Olson's attorney concluded his cross-examination of Officer Blood by asking how long the field sobriety testing

took, and Officer Blood testified, "I would estimate, ah, nine to ten minutes, as my average time." Olson's attorney asked no further questions of Officer Blood. The hearing officer then questioned Officer Blood about the length of time the field sobriety testing took in this situation. Their exchange illustrates that, although Officer Blood could not recall when the field sobriety tests began, Officer Blood was not estimating how long the testing took based on his standard routine. Rather, Officer Blood identified the standard amount of time field sobriety testing took, as modified in the context of this particular situation:

> [Hearing Officer]: Just a little bit of follow-up. How long did it take to perform the standardized and non-standardized field sobriety tests prior to the S–D5?
>
> Officer Blood: I would estimate the standardized tests at about five minutes and the non-standardized at about five minutes. The standardized ones would have been longer, if [Olson] would have been able to complete them fully.
>
> [Hearing Officer]: In this case[?]
>
> Officer Blood: Yes, in this case.
>
> [Hearing Officer]: [S]o you're saying it ... it took less than five minutes in this case?
>
> Officer Blood: No ... I'm saying, in this case, it took five minutes. It usually would take ... I would estimate about eight minutes to complete the standardized tests.
>
> [Hearing Officer]: Okay. So total, the two types of tests, what was it again?
>
> Officer Blood: The total all together, I estimated at ten minutes.

This later exchange shows that under Officer Blood's normal routine, the standardized tests take about eight minutes, and the non-standardized tests take about five minutes, for a total of about thirteen minutes. In this particular case, Officer Blood testified that the standardized tests only took five minutes, rather than the usual eight minutes, resulting in his ten-minute calculation. Though Officer Blood could not recall when he started the tests, a reasoning mind reasonably could have concluded that Officer Blood testified with sufficient particularity how long they took to complete in this situation. Olson did not rebut the Department's prima facie evidence of fair administration.

[¶ 18] Because the Intoxilyzer test was initiated at 12:30 a.m., Officer Blood had to ascertain that the chewing tobacco had been removed from Olson's mouth by 12:10 a.m. Officer Blood testified that the S–D5 began at 12:17 a.m., and the field sobriety tests began nine or ten minutes before the S–D5. Nine or ten minutes prior to 12:17 a.m. is 12:07 or 12:08 a.m., twenty-two or twenty-three minutes prior to the Intoxilyzer test. There was no evidence presented to contradict the hearing officer's finding that "the tobacco chew was removed at about 12:07 a.m." As this Court has said, "a fact-finder may draw reasonable inferences based on the evidence presented...." *Buchholtz*, 2008 ND 53, ¶ 14, 746 N.W.2d 181. We conclude a reasoning mind reasonably could have concluded the hearing officer's findings are supported by the weight of the evidence on the entire record.

### V

[¶ 19] We reverse the district court's judgment and reinstate the administrative suspension of Olson's driving privileges.

[¶ 20] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.