# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 80

Shaun Robert Ebach,                                             Appellant

v.

North Dakota Department
of Transportation,                                              Appellee

No. 20180290

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Donovan J. Foughty, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Luke T. Heck (argued) and Drew J. Hushka (on brief), Fargo, ND, for appellant.

Nici Meyer, Assistant Attorney General, Bismarck, ND, for appellee.

**McEvers, Justice.**

[¶1]     Shaun Robert Ebach appeals from a district court judgment affirming an administrative hearing officer's decision to suspend Ebach's driving privileges for 180 days for driving under the influence of alcohol.  On appeal, Ebach argues the administrative hearing officer erred by admitting invalid chemical breath test records and by making result-oriented findings of fact, and that he is entitled to attorney fees and costs.  We conclude the test record was properly admitted, and a reasoning mind reasonably could have concluded the administrative hearing officer's finding that the officer who administered the Intoxilyzer test ascertained a 20-minute waiting period prior to administering the test is supported by the weight of the evidence on the entire record. Therefore, we affirm the district court judgment.


I

[¶2]     On February 18, 2018, Officer Nickolas Holter arrested Ebach for driving under the influence.  Officer Holter transported Ebach to the law enforcement center, and administered a chemical breath test ("Intoxilyzer") which indicated Ebach's alcohol content was over the legal limit.  On the Intoxilyzer Test Record and Checklist, Officer Holter certified that the 20-minute waiting period was ascertained and that he followed the approved method and instructions displayed by the Intoxilyzer in conducting the test.  The Intoxilyzer Test Record and Checklist stated the test result was obtained at 2:20 a.m.  Officer Holter also completed a Report and Notice form which stated Ebach was observed driving at 2:03 a.m., was arrested at 2:12 a.m., and provided a breath specimen for the Intoxilyzer test at 2:20 a.m.

[¶3]     Ebach requested and received an administrative hearing before the North Dakota Department of Transportation ("the Department").  Several items were entered into evidence without objection at the hearing, including: the list of certified chemical

test operators, the list of approved chemical testing devices, the Intoxilyzer 8000 installation and repair checkout, the approved method to conduct breath test with the Intoxilyzer 8000, and the Ethanol breath standard analytical report. Officer Holter testified that he filled out the Report and Notice form and certified a copy of the Intoxilyzer Test Record and Checklist and that he followed the approved method in administering the Intoxilyzer test. Following Officer Holter's testimony, the hearing officer offered Exhibit 1b, the Report and Notice form, and Exhibit 1c, the Intoxilyzer Test Record and Checklist for admission into evidence. Ebach objected, arguing the Report and Notice form failed "to establish adequate approved method was conducted as it pertains to the times on its face," and that the Intoxilyzer Test Record and Checklist failed to show "scrupulous compliance with the approved method" for chemical testing. The hearing officer overruled the objections and admitted both.

[¶4]     After the exhibits were admitted, Officer Holter testified that the Intoxilyzer machine was running six minutes behind his watch at the time of the test, and that the Intoxilyzer test result was *actually* obtained at 2:26 a.m., not 2:20 a.m. Officer Holter testified that he relied on his watch to ascertain the 20-minute waiting period.

[¶5]     Following the administrative hearing, the Department issued its decision, suspending Ebach's driving privileges for 180 days. The Department found:

> Holter used his watch to ascertain the 20 minute waiting period, before administering the test on an approved and installed Intoxilyzer 8000 according to the approved method. Though the Intoxilyzer test record shows the device started with the diagnostic at 02:19, the time on the device was behind that on Holter's watch. According to the test record, Subject Test 1 was obtained at 02:20 and Subject Test 2 was obtained at 02:26. The "Reported AC" of 0.208 was obtained at 02:20 (2:20 a.m.) from the lower of the two subject tests. Contrary to the time on the test record, the test sample was actually obtained about 23 minutes after Holter stopped and contacted Ebach. There is no evidence Ebach had anything in his mouth during his time with Holter. The prima facie showing of the test record that the 20 minute waiting period had been ascertained has not been rebutted. The test was fairly administered.

[¶6]     Ebach appealed the Department's decision to the district court. The court affirmed the Department's decision.

[¶7]    On appeal, Ebach argues the hearing officer erred by admitting the Intoxilyzer Test Record and Checklist into evidence without adequate foundation, and making result-oriented findings of fact.  Ebach also argues he is entitled to attorney fees and costs.

II

[¶8]    Our well-established standard of review for driving privilege suspensions is set forth below:

> We review a decision to suspend a person's driving privileges under N.D.C.C. ch. 28-32, the Administrative Agencies Practice Act. The review is limited to the record before the administrative agency. We will not, however, make independent findings or substitute our judgment.  We will only determine whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record.  An administrative agency's decision must be affirmed unless:
>
> 1.    The order is not in accordance with the law.
> 2.    The order is in violation of the constitutional rights of the appellant.
> 3.    The provisions of this chapter have not been complied with in the proceedings before the agency.
> 4.    The rules or procedure of the agency have not afforded the appellant a fair hearing.
> 5.    The findings of fact made by the agency are not supported by a preponderance of the evidence.
> 6.    The conclusions of law and order of the agency are not supported by its findings of fact.
> 7.    The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
> 8.    The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.
>
> N.D.C.C. § 28-32-46.

*Mees v. N.D. Dep't of Transp.*, 2013 ND 36, ¶ 9, 827 N.W.2d 345 (internal quotations and citations omitted).  "This Court gives deference to the agency's findings and will

not substitute its own judgment for that of the agency." *Lee v. N.D. Dep't of Transp.*, 2004 ND 7, ¶ 9, 673 N.W.2d 245 (citation omitted). "Questions of law are fully reviewable on appeal." *Mees,* at ¶ 9. (citation omitted). "The administrative hearing officer resolves the underlying factual disputes." *Lee,* at ¶ 9.

## III

[¶9]    Ebach argues the Intoxilyzer Test Record and Checklist should not have been admitted into evidence because the records showed lack of scrupulous compliance with the required 20-minute waiting period.

[¶10]  Section 39-20-05(4), N.D.C.C., states in pertinent part:

> At a hearing under this section, the regularly kept records of the director and state crime laboratory may be introduced. Those records establish prima facie their contents *without further foundation*. For purposes of this chapter, the following are deemed regularly kept records of the director and state crime laboratory:
>
> a.      . . . *a certified copy of the checklist and test records received by the director from a certified breath test operator*;
>
> b.      Any copy of a certified copy of a certificate of the director of the state crime laboratory or the director's designee relating to approved methods, devices, operators, materials, and checklists used for testing for alcohol concentration or the presence of drugs received by the director from the director of the state crime laboratory or the director's designee, or that have been electronically posted with the state crime laboratory division of the attorney general at the attorney general website; and
>
> c.      Any copy of a certified copy of a certificate of the director of the state crime laboratory designating the director's designees.

4

(Emphasis added.)  We have previously recognized "[t]hese records establish their contents without further foundation."  *Salter v. Hjelle*, 415 N.W.2d 801, 804 (N.D. 1987).[1]

[¶11]  Section 39-20-07, N.D.C.C., also addresses admitting chemical breath test records into evidence and states, in part:

> Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any individual while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, *evidence of the amount of alcohol concentration* or presence of other drugs, or a combination thereof, in the individual's blood, breath, or urine at the time of the act alleged as shown by a chemical analysis of the blood, breath, or urine is admissible.  For the purpose of this section:
>
> . . . .
>
> 5. The results of the chemical analysis *must* be received in evidence when it is shown that the sample was *properly obtained and the test was fairly administered*, and if the test is shown to have been *performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee*, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee. . . . .
>
> 6. The director of the state crime laboratory or the director's designee may appoint, train, certify, and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the director of the state crime laboratory or the director's designee for appropriate action.  Upon approval of the methods or devices, or both, required to perform the tests and the individuals qualified to administer them, the director of the state crime laboratory or the director's designee

---

[1]Since *Salter*, the statute has moved emphasized language into its own subsection although the substance remains unchanged from 1987.

5

shall prepare, certify, and electronically post a written record of the approval with the state crime laboratory division of the attorney general at the attorney general website, and shall include in the record:

a.  An annual register of the specific *testing devices currently approved*, including serial number, location, and the date and results of last inspection.

b.  An annual register of *currently qualified and certified operators of the devices*, stating the date of certification and its expiration.

c.  The *operational checklist and forms prescribing the methods currently approved* by the director of the state crime laboratory or the director's designee in using the devices during the administration of the tests.

d.  The *certificate of the director of the state crime laboratory designating the director's designees*.

e.  The certified records electronically posted under this section *may be supplemented* when the director of the state crime laboratory or the director's designee *determines it to be necessary*, and any certified supplemental records have the same force and effect as the records that are supplemented.

f.  The state crime laboratory shall make the certified records required by this section available for download in a printable format on the attorney general website.

(Emphasis added.)  We have previously stated, "[t]he purpose of § 39-20-07(5) and (6) is to ease the requirements for admissibility of chemical test results while ensuring that the test upon which the results are based is fairly administered."  *Salter*, 415 N.W.2d at 803.  In *Salter*, we concluded N.D.C.C. § 39-20-05 and § 39-20-07 revealed the legislature intended a certified copy of the checklist along with the documents described in § 39-20-07(6) are "the necessary and sufficient means to

6

render test results admissible without further foundation." *Salter*, at 804. Since our opinion in *Salter*, N.D.C.C. § 39-20-07(6) has been amended adding subsections (d), (e), and (f).

[¶12] The hearing officer entered into evidence (1) a certified copy of the Intoxilyzer Test Record and Checklist, (2) a list of the approved chemical testing devices, (3) a list of certified chemical test operators, (4) the approved method to conduct breath tests with the Intoxilyzer 8000 (an operational checklist and form prescribing the methods approved in using the device administered), and (5) a memo describing designees of the state crime laboratory director. The approved method to conduct breath tests with the Intoxilyzer 8000 states: "When the test is conducted according to this method it is considered to be fairly administered." These items—the documents referenced in N.D.C.C. § 39-20-07(6)—taken together render the Intoxilyzer Test Record and Checklist admissible *without further foundation*. Beyond relying solely on documentary foundation, however, the hearing officer also elicited testimony from Officer Holter before admitting the exhibits, that he followed the approved method when administering the Intoxilyzer test and that he certified a copy of the Intoxilyzer Test Record and Checklist and sent it along with the Report and Notice form.

[¶13] Once the Intoxilyzer Test Record and Checklist is admitted into evidence, the Department establishes prima facie its contents without further foundation; if Ebach wished to rebut the Department's documentary foundation of fair administration "by establishing either a deviation from approved procedures or a lack of fair administration despite compliance with approved procedures," he had the opportunity and the burden to present sufficient evidence accordingly. *See Thorsrud v. N.D. Dep't of Transp*, 2012 ND 136, ¶ 10, 819 N.W.2d 483 (citation omitted). "The Intoxilyzer Test Record and Checklist is, therefore, presumed to show fair administration of the approved method *until* the defendant shows that the evidence as a whole clearly negates the presumed fact." *Mees*, 2013 ND 36, ¶ 12 (citation and quotation omitted) (emphasis added). "[U]nless the defendant introduces enough

7

evidence to rebut th[e] foundation of fair administration, evidence discrediting the test results will affect the *weight* given the blood-test result and not its *admissibility*." *State v. Zimmerman*, 516 N.W.2d 638, 642 (N.D. 1994) (internal citation and quotation omitted) (emphasis added); *see also Kiecker v. N.D. Dep't of Transp.*, 2005 ND 23, ¶ 10, 691 N.W.2d 266 ("Under the statute, testimony disputing the facts contained in properly completed documents will generally affect the weight given to the test, not its admissibility.").

[¶14] Here, Ebach attempted to rebut the presumption of fair administration by pointing out that the face of the Report and Notice form showed Officer Holter did not follow the approved method by failing to adhere to the 20-minute waiting period. However, according to Officer Holter's testimony, he made sure Ebach had nothing in his mouth before administering the first breath screening test, which he estimated occurred roughly ten minutes after he initiated the traffic stop. He testified that Ebach had nothing to eat, drink, or smoke from the time of the stop to the time of the first breath screening test. He testified he relied on his watch to ascertain the 20-minute waiting period required for administering the Intoxilyzer. Ebach presented no rebuttal evidence that there was anything in his mouth in the 20 minutes prior to the administration of the Intoxilyzer test other than testimony elicited from Officer Holter that he did not correct the time discrepancy between his watch and the Intoxilyzer on the Intoxilyzer Test Record and Checklist.

[¶15] Ebach's attempt to rebut the presumption of fair administration appears to be the following line of questioning on cross-examination:

| MR. HECK: | And you would agree that the Approved Method of Chemical Testing reflects that if there is an inaccurate time on the report or on the Chemical Test Checklist that you are to make modifications to correct times; right? |
|---|---|
| OFFICER HOLTER: | Possibly. |
| MR. HECK: | And you agree you didn't manually or through the machine or by hand change the times to reflect the 2:26 time you testified to? |

OFFICER HOLTER:    I did not, I just put that into my report.

In *Kiecker*, this Court held steps not expressly included in the prescribed methods provided by the State Toxicologist are not foundational requirements for the admission of Intoxilyzer test records.  2005 ND 23, ¶ 13.  The driver in *Kiecker* objected to the admission of the Intoxilyzer report at an administrative hearing because he claimed the Department failed to show the Intoxilyzer machine was recalibrated after it was moved.  *Id*. at ¶ 11.  This Court reiterated its prior holding that "[u]nless 'the State Toxicologist includes in the approved method . . . a specific reference to a supplemental filing, stating that it is a required part of the approved method for fair administration of a test, we will not infer that a filed document is part of the foundational requirement for proving fair administration.'"  *Id*. at ¶ 12 (quoting *City of Bismarck v. Bosch*, 2005 ND 12, ¶ 11, 691 N.W.2d 260).  Likewise here the approved method for conducting breath tests, admitted into evidence without objection, specifically provides:

> If upon review, the operator determines any information entered prior to testing or during the test is incorrect, the operator *may* amend the printed test record by crossing out the incorrect information and writing the correction on the printed test record.  Note: Entered information does not have any effect on the subject's reported breath alcohol concentration.  *Incorrect data in these areas will not cause the test to be invalid*.  The operator *may* correct the following items if necessary:
> . . . .
> b.    Date and Time

The language of the approved method does not make correction of inaccuracies in date and time a required part of the approved method for fair administration of the test.  Therefore, to lay a proper foundation for the admission of the Intoxilyzer Test Record and Checklist, the Department was not required to show Officer Holter was required to correct an inaccurate time on the Intoxilyzer Test Record and Checklist.  Here, the documentary evidence and the testimony of Officer Holter, who administered the test, showed scrupulous compliance with the methods approved by the State Toxicologist.

9

[¶16]   Ebach cites *Ringsaker v. N.D. Dep't of Transp.*, 1999 ND 127, 596 N.W.2d 328 to support his position; however, in that case, a flaw was ascertainable when viewing the Intoxilyzer test result on its *own* because there, the Intoxilyzer printed an incorrect figure ("22/*0/17") on the results where the date should have been. *Id*. at ¶ 3.  Here, the Intoxilyzer Test Record and Checklist *on its face* shows no flaw.  The Intoxilyzer Test Record and Checklist reads "20 minute waiting period ascertained? Y" and "I followed the Approved Method and the instructions displayed by the Intoxilyzer in conducting this test."  Only when viewed alongside the Report and Notice form is any discrepancy apparent.

[¶17]   The hearing officer, in his decision, concluded that Officer Holter did ascertain the 20-minute waiting period, and that Ebach failed to rebut by presenting evidence that anything was in his mouth during the waiting period.  Relying on the record before the hearing officer, we hold a reasoning mind reasonably could have concluded the hearing officer's finding that the officer who administered the Intoxilyzer test ascertained a 20-minute waiting period prior to administering the test is supported by the weight of the evidence.

IV

[¶18]   Because we are affirming the district court's judgment affirming the hearing officer's decision to suspend Ebach's driving privileges, we need not address Ebach's argument relating to attorney fees and costs.

V

[¶19]   We affirm the district court judgment.

[¶20]   Lisa Fair McEvers
        Daniel J. Crothers
        Jerod E. Tufte
        Jon J. Jensen
        Gerald W. VandeWalle, C.J.