# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2020 ND 91

Holden Thomas Kastet,                                                     Appellee

     v.

Ronald Henke, Interim Director,

Department of Transportation,                                          Appellant

### No. 20200003

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable Cherie L. Clark, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Michael T. Pitcher, Attorney General's Office, Bismarck, ND, for appellant.

Luke T. Heck (argued) and Drew J. Hushka (appeared), Fargo, ND, for appellee.

**Crothers, Justice.**

[¶1]   The North Dakota Department of Transportation (Department) appeals the district court judgment reversing the hearing officer's decision suspending Holden Thomas Kastet's driving privileges for 365 days. The Department argues the hearing officer did not abuse his discretion in admitting the chemical breath test, and State Highway Patrol Trooper King scrupulously complied with the approved method for testing Kastet's breath on the Intoxilyzer 8000. We reverse the district court judgment and remand with instructions to reinstate the hearing officer's decision.

I

[¶2]   On July 6, 2019, Trooper King stopped a vehicle driven by Kastet. King arrested Kastet for driving under the influence of alcohol, and read him the North Dakota implied consent advisory. Kastet agreed to submit to a chemical test and was transported to Stutsman County Correctional Center.

[¶3]   At 8:10 a.m. King started the Intoxilyzer 8000 machine. Kastet requested to speak with an attorney. King provided Kastet an opportunity to attempt to contact his attorney by telephone and accommodated Kastet's request for a glass of water at 8:23 a.m. The Intoxilyzer machine continued running the first test sequence while Kastet made telephone calls. Another law enforcement officer entered the room and began using his computer next to the Intoxilyzer. At 8:26 and 8:27 a.m. the Intoxilyzer detected radio frequency interference (RFI). Kastet's attempts to contact an attorney were unsuccessful and King advised Kastet the two hour testing time limit was near. At 8:54 a.m. a second test sequence was started and Kastet was tested at 8:57 and 9:03 a.m.

[¶4]   Kastet argued the approved method was not followed after RFI was detected. The hearing officer concluded the appropriate method was used to terminate the test because it was abandoned so Kastet could call an attorney, and not due to RFI. The hearing officer concluded, "the test was fairly administered in accordance with Chapter 39-20 and the approved method."

The hearing officer explained, "In Kastet's case, the first test was abandoned, not because of an RFI error, but because he needed time to call an attorney. At that point, King had the option of manually aborting the test, or simply letting it run its course and 'time out' without a breath sample being collected." The hearing officer suspended Kastet's driving privileges for 365 days. The district court reversed.

[¶5]   On appeal the Department argues the hearing officer did not abuse his discretion in admitting the chemical breath test, and King scrupulously complied with the approved method for testing Kastet's breath on the Intoxilyzer.

## II

[¶6]   "The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs the review of a decision to revoke driving privileges." *Haynes v. Dir., Dep't of Transp.*, 2014 ND 161, ¶ 6, 851 N.W.2d 172. We review the Department's original decision. *DeForest v. N.D. Dep't of Transp.*, 2018 ND 224, ¶ 5, 918 N.W.2d 43. "This Court gives deference to the agency's findings and will not substitute its own judgment for that of the agency." *Ebach v. N.D. Dep't of Transp.*, 2019 ND 80, ¶ 8, 924 N.W.2d 105 (citing *Lee v. N.D. Dep't of Transp.*, 2004 ND 7, ¶ 9, 673 N.W.2d 245 (internal citations omitted)). "The administrative hearing officer resolves the underlying factual disputes." *Id*. "We will only determine whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record." *Ebach*, at ¶ 8. "Questions of law are fully reviewable on appeal." *Id*. (citing *Mees v. N.D. Dep't of Transp.*, 2013 ND 36, ¶ 9, 827 N.W.2d 345 (internal citations omitted)). We must affirm the Department's decision unless:

> "1. The order is not in accordance with the law.
> 2. The order is in violation of the constitutional rights of the appellant.
> 3. The provisions of [chapter 28-32] have not been complied with in the proceedings before the agency.
> 4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28-32-46. The admissibility of evidence at an administrative adjudicative proceeding generally is governed by the North Dakota Rules of Evidence. N.D.C.C. § 28-32-24; *see also Jangula v. N.D. Dep't of Transp.*, 2016 ND 116, ¶ 8, 881 N.W.2d 639. A hearing officer has "broad discretion" when making evidentiary determinations. We review a hearing officer's evidentiary determinations for an abuse of discretion. *Id.*

III

[¶7] The State argues the hearing officer properly admitted the results of Kastet's Intoxilyzer test, and Trooper King scrupulously complied with the approved method for testing Kastet's breath.

[¶8] Kastet argues the district court correctly determined the hearing officer's decision was not in accordance with the law because the hearing officer improperly admitted the chemical test results. Kastet further argues King failed to scrupulously comply with the approved method when RFI is detected and no expert testimony was provided regarding the effect of the failure to comply with the approved method.

[¶9] "The administrative hearing officer resolves the underlying factual disputes." *Ebach,* 2019 ND 80, ¶ 8, 924 N.W.2d 105 (citing *Lee,* 2004 ND 7, ¶ 9, 673 N.W.2d 245). Here, the parties disagree as to why the test was terminated. The hearing officer concluded the test was terminated "not because of an RFI error, but because he needed time to call an attorney." This finding of fact is supported by a preponderance of the evidence. King testified that once they arrived at the correctional center they began the chemical test. King stated,

3

"As the test was started prior to the first subject sample . . . breath sample, Mr. Kastet advised that he wished to speak with an attorney, specifically, I believe he mentioned Luke Heck." King testified he allowed Kastet the opportunity to contact an attorney, and the test continued running while Kastet made those calls. King testified that while Kastet was attempting to reach an attorney a coworker at the Jamestown Police Department placed his laptop on the counter space near the Intoxilyzer machine. At that point, the Intoxilyzer detected RFI.

[¶10] The Intoxilyzer records also support the finding that the test was abandoned because Kastet needed time to call an attorney. The first sequence recorded the first and second subject tests as 0.000*. "Subject samples" were taken at 8:17 and 8:26 a.m. The 0.000 subject tests indicate deficient samples were collected. The room air was measured at 8:14, 8:20, and 8:22 a.m. with a reading of 0.000, and RFI was detected at 8:26 and 8:27 a.m. Therefore, the record supports by a preponderance of the evidence that the first test sequence terminated because Kastet requested to speak to an attorney and not due to RFI.

[¶11] Kastet argues King failed to scrupulously comply with the approved method when RFI was detected. The Office of Attorney General Crime Laboratory Division issues the "Approved Method to Conduct Breath Tests with the Intoxilyzer 8000" manual. The manual outlines the testing procedure and how to interpret the test. Step five states:

> "'20 Minute Wait?' appears on display. Before proceeding, the operator shall ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample. Answer the question with either 'N' (No) or 'Y' (Yes) and press Enter. If 'N' is entered the instrument will not proceed."

Under "Interpretation of the Test (B)" the manual states:

> "If any breath sample is determined to be deficient, meaning the subject did not provide a breath sample or did not provide an adequate breath sample, the instrument will print '*Subject Test' followed by '#.###*' with the highest alcohol concentration

obtained during the test. The asterisk (*) cross-references a message printed below on the test record."

Manual section (B)(2) states, "If both breath samples rendered by the subject are deficient, the test is still valid, but with deficient breath samples. The subject either refused or could not provide a sample. This is not an acceptable breath alcohol result."

[¶12] Here, the first record has an asterisk beside both subject tests which indicate the samples were deficient. The message beside the subject test asterisk states, "Deficient Sample–Value Printed was Highest Obtained." The two subject tests were taken prior to RFI being detected. Therefore, the breath samples were deficient prior to the RFI invalidity. The manual states the test is valid, but with deficient breath samples. The manual only provides two reasons why the samples are deficient, stating "the subject either refused or could not provide a sample." There is no evidence Kastet was unable to provide a sample. Therefore, instead of citing Kastet for refusal, King allowed Kastet to attempt a second test.

[¶13] The second record states the first subject test was 0.103, and the second subject test was 0.097. It also states, "Difference OK" and "No RFI Detected." Further, while Kastet was attempting to call an attorney he had a glass of water. King testified at 8:23 a.m. he provided Kastet with a glass of water and noted the time because he knew he had to wait 20 minutes to maintain the integrity of a chemical test. Under the approved method, "the operator shall ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample." That means that the operator *was required* to wait until after 8:43 a.m. to perform the test. The test sequence began at 8:54 a.m. and concluded at 9:03 a.m. Therefore, this test was run without error or difficulty.

[¶14] The hearing officer concluded the Intoxilyzer result was admissible because King followed the approved method. We agree. Therefore, the hearing officer did not abuse his discretion in admitting the Intoxilyzer test results and ultimately suspending Kastet's driving privileges.

IV

[¶15] We reverse the district court judgment, and remand with instructions to reinstate the hearing officer's decision suspending Kastet's driving privileges for 365 days.

[¶16] Daniel J. Crothers
Gerald W. VandeWalle
Jon J. Jensen, C.J.
Jerod E. Tufte
Lisa Fair McEvers