2013 ND 122

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Julian Joseph KELLER, Defendant and Appellant.**

No. 20120416.

Supreme Court of North Dakota.

July 18, 2013.

Dawn M. Deitz, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Chad R. McCabe, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Julian Keller appeals a district court judgment after a jury found him guilty of driving under the influence. Concluding the district court properly admitted Keller's chemical blood test, we affirm.

## I

[¶ 2] In June 2012, Keller was charged with driving under the influence. At the jury trial, the State introduced exhibit 1, which included a statement from a forensic scientist assigned by the State Toxicologist certifying that the State Toxicologist-approved steps were taken in analyzing Keller's blood sample. Exhibit 1 also included the top portion of Form 104 with a completed checklist of the steps taken to retrieve Keller's blood specimen. The section of Form 104 labeled "specimen submitted by," where the arresting officer was to fill in his name, was left blank. The bottom portion of Form 104 containing the State Toxicologist-approved method of taking a blood sample was not admitted into evidence.

[¶ 3]   The arresting deputy sheriff testified he failed to complete the "specimen submitted by" portion of Form 104, but testified he recognized his handwriting on the rest of the form. The deputy testified to the sequence of events that took place in acquiring Keller's blood sample. He was not designated an expert witness when he testified. The forensic scientist testified to the analytical report portion of Form 104. Keller objected on a number of occasions, arguing that because Form 104 was not filled out properly and because the bottom portion of the form was missing, the blood alcohol test was not fairly administered. Over Keller's objection, the district court admitted into evidence the blood alcohol test, and a jury found Keller guilty.

[¶ 4]   Keller argues the district court erred by receiving into evidence a form missing the "specimen submitted by" section, and the State did not introduce expert testimony to overcome the problem. Keller also argues the district court erred by receiving into evidence an analytical report when the State failed to introduce the bottom portion of Form 104 and failed to establish approved methods for blood sample collection and submission.

[¶ 5]   The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Keller timely appealed under N.D.R.App.P. 4(b). We have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

## II

### A

[¶ 6]   Keller argues the district court erred by receiving into evidence Form 104 with the "specimen submitted by" portion left blank and the State did not introduce expert testimony to establish fair administration of the blood test. "We review a district court's evidentiary ruling under an abuse-of-discretion standard." *State v. Muhle,* 2007 ND 131, ¶ 10, 737 N.W.2d 636. A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably or when it misinterprets or misapplies the law. *Id.*

[¶ 7]   "Whether a blood test was fairly administered is a preliminary question of admissibility left to the discretion of the trial judge." *State v. Zimmerman,* 516 N.W.2d 638, 642 (N.D.1994). We have identified the foundational elements of N.D.C.C. § 39–20–07 that must be documented or demonstrated for the admission of an analytical report:

> The results of the chemical analysis *must be received* in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist.

*Kiecker v. N.D. Dep't of Transportation,* 2005 ND 23, ¶ 9, 691 N.W.2d 266 (emphasis added). "Form 104, drafted by the State Toxicologist, contains directions and a checklist to ensure proper collection and submission of blood samples." *Barros v. N.D. Dep't of Transportation,* 2008 ND 132, ¶ 10, 751 N.W.2d 261. "Fair administration of a blood test can be established by proof that those directions have been scrupulously followed; however, 'scrupulous' compliance does not mean 'hypertechnical' compliance." *Id.*

Form 104 has two primary functions. First, the certification of the blood specimen collector ensures that the scientific accuracy and reliability of the test are not affected by improper collection or preservation of the blood sample. Sec-

ond, the certifications of the specimen submitter and receiver provide an evidentiary shortcut for establishing chain of custody by ensuring the specimen is received in the same condition as it was submitted.

*Id.* at ¶ 11 (internal quotations and citations omitted).

■ [¶ 8] "[I]f the State fails to establish compliance with those directions for sample collection which go to the scientific accuracy and reliability of the test, the State must prove fair administration of the test through expert testimony." *State v. Schwalk,* 430 N.W.2d 317, 324 (N.D.1988). "However, when the deviation from the approved method could not have affected the reliability or accuracy of the test results, the deviation does not render the test results inadmissable." *City of West Fargo v. Hawkins,* 2000 ND 168, ¶ 17, 616 N.W.2d 856. "We have never held that expert testimony is necessary to explain what is readily observable to the ordinary person." *Schwind v. Dir., N.D. Dep't of Transportation,* 462 N.W.2d 147, 152 (N.D. 1990).

[¶ 9] "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears...." N.D.C.C. § 1–02–02. The statute says the chemical analysis *must be received* when it is shown the test was fairly administered. It does not say "it may not be received unless...." N.D.C.C. § 39–20–07(5). This is a shortcut method, although somewhat altered by the United States Supreme Court's confrontation cases in recent years and addressed by this Court's amendments to N.D.R.Ev. 707. *See Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); *Williams v. Illinois,* —— U.S. ——, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012); *State of North Dakota, ex rel. Roseland v. Herauf,* 2012 ND 151, 819 N.W.2d 546 (because a signed statement attesting a blood sample was properly drawn is required before an analytical report can be admitted into evidence, the defendant may require the state to produce the person who drew the sample to testify under Rule 707).

■ [¶ 10] The State argues the deputy's failure to complete the "specimen submitted by" portion of Form 104 did not affect the scientific accuracy or reliability of the blood sample. We have held, when a testing officer deviates from the State Toxicologist's approved method in a manner that affects scientific accuracy and reliability of the test and there is no expert testimony on the effect, the test has not been fairly administered. *See Wagner v. Backes,* 470 N.W.2d 598 (N.D.1991) (testing officer did not insert the card on which results are recorded at the time required); *Ringsaker v. Dir., N.D. Dep't of Transportation,* 1999 ND 127, ¶ 14, 596 N.W.2d 328 (incorrect testing date was printed on the report); *Price v. N.D. Dep't of Transportation Director,* 469 N.W.2d 560 (N.D. 1991) (officer performed testing procedures out of the approved sequence); *Schwalk,* 430 N.W.2d at 324 (State failed to show it complied with each and every step).

[¶ 11] When asked about the missing "specimen submitted by" portion of Form 104, the deputy testified he recognized his handwriting on the form. He testified he made a clerical error by not putting his name in the "specimen submitted by officer's name" section of the form.

[¶ 12] In addition, the deputy testified he took Keller to the hospital, where a nurse took a state crime lab blood kit out of a lock box. The kit was sealed. He testified he opened and examined the contents of the kit. After Keller's blood was

drawn, the nurse handed the deputy the tube containing the blood, and he sealed and initialed the tube. He observed the nurse draw Keller's blood. He testified the nurse used the needle and guide and tube from the kit. He observed the nurse draw blood and invert the tube several times and fill out the appropriate paperwork. He testified the nurse took the sample within two hours of Keller's driving, the tube was sealed, and the kit was labeled. The deputy testified he packaged and sealed the test kit and Form 104 and the package stayed in his custody and control until he mailed it to the state crime lab. When asked why he did not bring the bottom portion of Form 104 with him to court, the deputy testified he kept it for his records and was not told to bring it to court.

[¶ 13] The deputy's failure to complete the "specimen submitted by" portion of Form 104 by not filling in his name does not fail our requirement of "scrupulous compliance." His detailed testimony of the steps he undertook to properly administer Keller's blood test reflects the trial court's conclusion that the scientific reliability or accuracy of the test was not compromised by his failure to put his name on the form, and we conclude the district court did not abuse its discretion in admitting it.

## B

■ [¶ 14] Keller argues, because the State failed to introduce the bottom portion of Form 104, it failed to establish the approved method for blood sample collection and the district court erred in entering Keller's blood test into evidence.

■ [¶ 15] "Whether a blood test was fairly administered is a preliminary question of admissibility left to the discretion of the trial judge." *State v. Asbridge*, 555 N.W.2d 571, 573 (N.D.1996) (citing *State v. Vogel*, 467 N.W.2d 86 (N.D.1991); N.D.R.Ev. 104(a) and 1008). "Once test results have been admitted, the jury may assess their weight." *State v. Stroh*, 2011 ND 139, ¶ 6, 800 N.W.2d 276. In *Asbridge*, we said:

N.D.C.C. § 39–20–07(5) . . . authorizes the State Toxicologist to "approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and . . . issue a certificate to all qualified operators. . . ." Those records, when "certified by the clerk of the district court, *must be admitted* as prima facie evidence of the matters stated in the records," and a certified copy of the blood analysis issued by the State Toxicologist "must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter." N.D.C.C. § 38–20–07(7) and (8). Although subsections (7) and (8) state that these certified documents "must" be admitted and accepted as prima facie evidence, the legislature's use of the word "must" merely requires their admission and specifies their evidentiary effect in court. *That these certified documents "must" be admitted in evidence does not suggest the legislature intended the certified lists of approved chemical-test operators and chemical testing devices, and the approved method to conduct alcohol analysis, are the only documents that will furnish the foundation for admission of a blood-test result.*

555 N.W.2d at 573–74 (emphasis added). In addition,

If the documentary evidence and the testimony of the participants in administering the test do not show scrupulous compliance with the methods approved by the State Toxicologist, the statutory mode of authentication cannot be used. In that case, the general rule of NDREv

901(a) applies and, a majority of this court holds, "the State must establish that there were sufficient indicia of reliability in the collection and submission of the blood sample" through expert testimony that establishes fair administration of the test.

*State v. Jordheim*, 508 N.W.2d 878, 882 (N.D.1993)(quoting *State v. Nygaard*, 426 N.W.2d 547, 549 (N.D.1988)).

[¶ 16] We have previously upheld an officer's testimony overcoming the failure to introduce a complete Form 104. *Schlosser v. N.D. Dep't of Transportation*, 2009 ND 173, ¶ 11, 775 N.W.2d 695. In *Schlosser*, we said:

> In *Jordheim*, the State failed to introduce the bottom portion of Form 104. [508 N.W.2d 878, 882 (N.D.1993) ]. However, the officer testified to the steps that he followed when conducting the blood draw. *Id.* He testified, "I received the container. I sealed it. I initialed the seal and everything. I filled out the rest of the proper paper work. I put it back in the canister. I sealed the canister." *Id.* at 880. The officer's testimony, along with the documents the State introduced, "established fair administration through scrupulous compliance with Form 104." *Id.* at 882. In *McNamara*, scrupulous compliance with the methods approved by the State Toxicologist was shown when the officer testified about the completion of each and every step listed on Form 104. *McNamara [v. Director Dep't of Transportation]*, 500 N.W.2d [585,] 590 [ (N.D.1993) ]. In *State v. Skarsgard*, the officer forgot to check one of the boxes on Form 104 indicating that a step had been completed, but testified that the step had, in fact, been completed. 2007 ND 160, ¶ 12, 739 N.W.2d 786. This testimony

established that the test had been fairly administered. *Id.* at ¶ 13.

2009 ND 173, ¶ 12, 775 N.W.2d 695. Conversely, when an officer did not testify he performed each and every step in accordance with detailed procedures promulgated by the State Toxicologist, this Court held the test was not fairly administered and a Form 104 missing the bottom half should not have been admitted into evidence. *State v. Sivesind*, 439 N.W.2d 530, 533 (N.D.1989).

[¶ 17] The State's exhibit 1 entered into evidence includes the top half of a completed Form 104 with a signed statement by the forensic scientist with the State Crime Laboratory stating how and when she received the labeled blood tube. Her signed statement certifies her analysis of Keller's blood sample was performed according to the method and with a device approved by the State Toxicologist. Exhibit 1 also contains a report showing the forensic scientist followed the approved method to conduct a blood alcohol analysis, as well as the instrument she used, and Keller had a blood alcohol content of 0.186%. Exhibit 3 is a list of approved chemical test operators, which included the forensic scientist. Exhibit 7 lists approved chemical testing devices and shows the device used by the forensic scientist was approved. The forensic scientist testified at trial and was available for cross-examination.

[¶ 18] In this case, neither the bottom half of the completed Form 104 nor a blank Form 104 were entered into evidence. The deputy testified he kept the bottom portion of Form 104 for his records and was not told to bring it to court. He testified, however, he has worked with the blood-testing kits 20 to 30 times before, and he brought a sealed one to show the jury. The deputy demonstrated how he opened the kit and explained its contents

to the jury while he described how Keller's blood sample was taken.

[¶ 19] The deputy testified he took Keller to the hospital to have a blood test performed. At the hospital, under the deputy's supervision, a nurse took a sealed state crime lab blood kit out of a locked room. The deputy testified he opened and examined the contents of the kit and confirmed everything was there, including a blank Form 104. The nurse drew Keller's blood. The deputy testified the nurse handed him the tube containing Keller's blood and he sealed and initialed the tube. He testified the nurse used the needle and guide and tube from the kit. He observed the nurse invert the tube several times and fill out the appropriate paperwork. The deputy testified the tube was then sealed and the kit was properly labeled. He testified he packaged and sealed the test kit and Form 104 himself, and the package stayed in his custody and control until he mailed it to the state crime lab.

[¶ 20] The documents introduced into evidence and certified by the State Toxicologist's assignee, coupled with the deputy's testimony, establish Keller's blood test was fairly administered. We conclude the district court did not abuse its discretion in admitting Keller's blood test into evidence.

### III

[¶ 21] We affirm the criminal judgment of the district court.

[¶ 22] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.