2015 ND 81

**Richard Louis KELLER, Appellant**

**v.**

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellee.**

**No. 20140341.**

Supreme Court of North Dakota.

April 9, 2015.

Justin J. Vinje, Bismarck, ND, for appellant.

Michael T. Pitcher, Office of Attorney General, Bismarck, ND, for appellee.

KAPSNER, Justice.

[¶ 1]   Richard Keller appeals a district court judgment affirming a North Dakota Department of Transportation hearing officer's decision suspending his driving privileges.  Because we conclude the approved method for administering an Intoxilyzer test was not followed and no expert testimony was offered on the effect, if any, of the deviation, we reverse and remand.

I

[¶ 2]   According to the administrative hearing testimony, a Bismarck police officer stopped Keller for driving over a lane-dividing line.  The officer noted Keller had glossy, bloodshot eyes, slurred speech, and appeared confused.  The officer also detected the odor of alcohol, and Keller admitted he had been drinking.  After failing to complete a field sobriety test, Keller submitted to and failed an onsite breath test and was arrested.  The officer transported Keller to the police department for chemical testing, and Keller blew into the Intoxilyzer machine providing only one adequate breath sample for the machine to read and would not or could not provide a second breath sample.  The officer prematurely terminated the test sequence before the machine timed itself out.

[¶ 3]   At the administrative hearing, Keller objected to the admission of the test record, arguing compliance with the approved method had not been demonstrated.  The hearing officer overruled the objection and concluded the arresting officer had reasonable grounds to believe Keller had been driving under the influence, and Keller was properly tested after his arrest

to determine his alcohol concentration. The hearing officer suspended Keller's driving privileges for one year. Keller appealed to the district court which affirmed the hearing officer's decision.

## II

[¶ 4] On appeal, Keller argues the Department failed to show scrupulous compliance with the approved method for administering the Intoxilyzer test, warranting exclusion of his test record.

[¶ 5] On an appeal of a district court's review of an administrative agency's decision, this Court reviews the agency's decision, giving deference to the hearing officer's findings. *Potratz v. N.D. Dep't of Transp.*, 2014 ND 48, ¶ 7, 843 N.W.2d 305. This Court does not make independent findings or substitute its own judgment for that of the agency. *Pesanti v. N.D. Dep't of Transp.*, 2013 ND 210, ¶ 7, 839 N.W.2d 851. Rather, this Court only determines "whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record." *Id.* (citation omitted). This Court reviews questions of law under the de novo standard of review and gives deference to the Department's findings of fact. *Potratz*, at ¶ 7. When reviewing an administrative hearing officer's evidentiary rulings, this Court employs the abuse of discretion standard. *Id.* This Court must affirm an administrative hearing officer's decision unless:

1.  The order is not in accordance with the law.
2.  The order is in violation of the constitutional rights of the appellant.
3.  The provisions of this chapter have not been complied with in the proceedings before the agency.
4.  The rules or procedure of the agency have not afforded the appellant a fair hearing.
5.  The findings of fact made by the agency are not supported by a preponderance of the evidence.
6.  The conclusions of law and order of the agency are not supported by its findings of fact.
7.  The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8.  The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 6] "Section 39–20–07(5), N.D.C.C., governs the admissibility of Intoxilyzer test results." *Buchholz v. N.D. Dep't of Transp.*, 2002 ND 23, ¶ 7, 639 N.W.2d 490 (citation omitted). The statute states, in pertinent part:

The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee.

N.D.C.C. § 39–20–07(5).

[¶ 7] Because the police officer prematurely aborted the testing sequence before the Intoxilyzer machine timed out, Keller argues scrupulous compliance with the approved method was not demonstrated. Keller argues that if scrupulous compliance with the approved method is not

shown, in order to admit the test record, expert testimony must be introduced to establish fair administration of the test. Since the Department did not offer any expert testimony, Keller argues the test record should not have been admitted into evidence.

[¶ 8] "Fair administration of an Intoxilyzer test may be established by proof that the method approved by the State Toxicologist for conducting the test has been scrupulously followed," but "scrupulous" compliance does not mean "hyper-technical" compliance. *Buchholz*, 2002 ND 23, ¶ 7, 639 N.W.2d 490. "If the State fails to establish compliance with those directions for sample collection which go to the scientific accuracy and reliability of the test, the State must prove fair administration of the test through expert testimony." *State v. Keller*, 2013 ND 122, ¶ 8, 833 N.W.2d 486 (citation omitted). When there is a deviation from the approved method that affects the test's scientific accuracy or reliability and there is no expert witness testimony on the effect, the test has not been fairly administered. *Id.* at ¶ 10; *see also Ringsaker v. Director, N.D. Dep't of Transp.*, 1999 ND 127, ¶ 14, 596 N.W.2d 328 (incorrect testing date printed on report); *Wagner v. Backes*, 470 N.W.2d 598, 600–01 (N.D.1991) (testing officer did not insert card on which results are recorded at the required time); *Price v. N.D. Dep't of Transp. Director*, 469 N.W.2d 560, 561–62 (N.D.1991) (officer performed testing procedures out of approved sequence); *State v. Schwalk*, 430 N.W.2d 317, 324 (N.D.1988) (State failed to show compliance with each step). However, not all deviations from an approved method are fatal. *Wagner*, at 600.

[W]hen the deviation from the approved method could not have affected the reliability or accuracy of the test results, the deviation does not render the test re-sults inadmissible. We have never held that expert testimony is necessary to explain what is readily observable to the ordinary person.

*Keller*, at ¶ 8 (internal citations omitted). Previously, this Court has stated that when the deviation involved some clerical or ministerial aspect of an approved method which could not have affected the test results, license suspensions have been upheld. *Wagner*, at 600; *see Schwind v. Director, N.D. Dep't of Transp.*, 462 N.W.2d 147, 152 (N.D.1990) (deputy, not nurse, inspected and certified blood sample's seal); *Heinrich v. N.D. St. Hwy. Comm'r*, 449 N.W.2d 587, 589 (N.D.1989) (post-test correction of standard solution number); *Schense v. Hjelle*, 386 N.W.2d 888, 891 (N.D.1986) (discrepancy in simulator's serial number used in Intoxilyzer test).

[¶ 9] The Department argues it is uncontested that Keller provided one sufficient breath sample and would not or could not provide an adequate second breath sample and points to the test interpretation section of the Approved Method to Conduct Breath Tests, arguing it discusses such a scenario:

If any breath sample is determined to be deficient, meaning the subject did not provide a breath sample or did not provide an adequate breath sample, the instrument will print " *Subject Test" followed by "# .# # # * " with the highest alcohol concentration obtained during the test. The asterisk (*) cross-references a message printed below on the test record.

1. If any one of the two breath samples rendered by the subject is deficient or the subject does not provide one of the two samples, the single test obtained shall constitute a valid test and the three digits for that test will

be reported as the breath alcohol concentration.

The Department argues that the single adequate breath sample obtained from Keller constitutes a valid test in accordance with the approved method. Because a reasoning mind could have inferred the machine would have timed out without a reported alcohol concentration for the second breath test because Keller would not or could not provide a sufficient second breath sample, the Department argues Keller's first breath sample constituted a valid test result, and the hearing officer did not abuse her discretion in admitting the test record.

[¶ 10] The officer testified that Keller would not or could not provide a sufficient second breath sample:

> For the second test he attempted to blow once, then he attempted to blow again and then he decided he was done. He wasn't trying to not cooperate, but he wasn't going to blow anymore. At that point in time, I should have let the machine time out. Without thinking about it, I hit the end test button.

The approved method states:

> If the subject does not blow with sufficient pressure and/or time to achieve an adequate breath sample, "Please Blow Until Tone Stops" will reappear with intermittent beeps. The subject has another three minutes to provide an adequate breath sample.

Here, the officer did not wait to allow Keller the additional three minutes to provide an adequate second breath sample. Instead, the officer manually aborted the Intoxilyzer test sequence before the machine timed itself out. Consequently, the record does not show the notations for a deficient breath sample which are identified in the approved method's test interpretation section. In the findings of fact section, the hearing officer stated the "In-toxilyzer testing was done in accordance with the state toxicologist's approved method." However, the approved method is silent regarding a premature abortion of the testing sequence, and the Department did not offer expert testimony to address the effect of manually aborting the test before the machine timed out. We cannot say, without expert advice, that the officer's premature termination of the testing sequence did not affect the test results; thus, we conclude the agency's finding of fact that the testing was done in accordance with the approved method is not supported by a preponderance of the evidence.

[¶ 11] Because the officer deviated from the Approved Method to Conduct Breath Tests which may have affected the scientific accuracy or reliability of the test, and there was no expert testimony on the effect, if any, of the deviation, the Department failed to show that the test was "fairly administered." We conclude the hearing officer should not have admitted Keller's Intoxilyzer test record into evidence. We reverse the judgment of the district court and remand to the Department for reinstatement of Keller's driving privileges.

[¶ 12] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS, JJ., and GARY H. LEE, D.J., concur.

[¶ 13] The Honorable GARY H. LEE, D.J., sitting in place of Sandstrom, J., disqualified.

LEE, District Judge, concurring in the result.

[¶ 14] I concur in the result.

[¶ 15] I write separately to note what I perceive to be the failure of the administrative hearing officer to adequately ad-

dress the objections made at the administrative hearing.

[¶ 16] As noted in ¶ 2 of the majority opinion, the arresting officer prematurely terminated the test sequence for the second breath sample and before the Intoxilyzer machine had timed itself out. Immediately following this testimony, Keller objected to the admission of the test results. He argued that the approved methods had not been followed. He further argued that no expert testimony was offered to establish that the test had been fairly administered.

[¶ 17] The hearing officer responded to the objection stating, "At this point I—I am denying the request, but—and I am going to ask the arresting officer, who ran the test, if he can explain what did happen that would have led to this entry on the test." The arresting officer then testified further. He again confirmed that he should have allowed the machine to continue through to the end of the test, but "[w]ithout thinking about it, [he] hit the end test button." The hearing officer ruled on Keller's objection stating, "Okay. I'm overruling the objection and admitting Exhibit 1 in its entirety...." No explanation was given which would shed any light on the hearing officer's factual or legal reasoning for overruling the objection.

[¶ 18] Keller proceeded to cross examine the arresting officer. At the end of that cross examination, he renewed his objection. He again argued that the approved method had not been followed. He argued that expert testimony was required to establish the validity of the test. Keller moved to dismiss the proceeding. The hearing officer responded to the objection and motion explaining, "If there is nothing further for the record I will now prepare a written decision." Nowhere in the transcript does the hearing officer provide any

rationale for her decision to first overrule, and then later ignore Keller's objections. The hearing officer's written decision is equally devoid of reasoning. In her findings of fact she simply writes, "Intoxilyzer testing was done in accordance with the state toxicologist's approved method...." In her conclusions of law she wrote, "Mr. Keller was arrested for DUI, was properly tested to determine his alcohol concentration after the arrest...."

[¶ 19] The objections made by Keller at the administrative hearing went to the very essence of the issue before the hearing officer—whether the test was fairly administered. Yet, the hearing officer failed to make any finding whatsoever regarding the objections either at the hearing or in a written decision. An agency is required to explicitly state its findings of fact and conclusions of law. N.D.C.C. § 28–32–39(1). This need for explicit reasoning is particularly pressing where the disputed issue is material and indeed dispositive of the case.

[¶ 20] A court reviewing an agency decision, whether at the district court or supreme court level, is held to a limited standard of review. The reviewing court must not make independent findings of fact, weigh the evidence, or supply its judgment for that of the administrative agency. A reviewing court can only apply this limited standard of review if it has the benefit of the hearing officer's findings and reasoning. The court should not have to speculate about factual findings made by the hearing officer or guess at the legal reasoning for the hearing officer's decisions. *Evans v. Backes,* 437 N.W.2d 848, 850–51 (N.D.1989).

[¶ 21] While I concur in the result in this case, in the future, when presented with a hearing officer's decision which is so

utterly lacking of reasoning, I believe the better practice would be to do as was done in the *Evans* case. In *Evans*, this Court remanded the case back to the hearing officer with instruction to prepare the necessary findings and conclusions in support of the decision. 437 N.W.2d at 851. The option of remand is available at the district court level as well. N.D.C.C. § 28–32–46.

[¶ 22] Gary H. Lee, D.J.