2017 ND 185

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Christian VON RUDEN, Defendant and Appellant**

**No. 20170015**

Supreme Court of North Dakota.

Filed 7/31/2017

Jessica J. Binder, Assistant State's Attorney, Stanton, N.D., for plaintiff and appellee.

Danny L. Herbel, Bismarck, N.D., for defendant and appellant.

McEvers, Justice.

[¶1] Christian Von Ruden appeals a criminal judgment convicting him of driving under the influence after entering a conditional guilty plea. Von Ruden argues evidence of the breath test records and checklists should be excluded because Officer Newman did not administer the test sequences in accordance with the approved method, and Officer Newman deprived him of his limited statutory right to counsel. We conclude Officer Newman scrupulously followed the approved method in administering the second breath test sequence and Von Ruden was not denied his limited statutory right to counsel. We therefore affirm.

## I

[¶2] On March 15, 2016, the State charged Von Ruden with driving a motor vehicle while under the influence of intoxicating liquor under N.D.C.C. § 39-08-01. Von Ruden moved to suppress evidence of the breath test records and checklists and requested an evidentiary hearing. Von Ruden argued Officer Newman did not follow the approved method in administering the breath tests.

[¶3] The parties subsequently waived an evidentiary hearing and agreed to have the district court rule based on a stipulated record. The court initially entered an order suppressing the evidence indicating the booking video from jail was not submitted by the State. The court relied only on evidence provided by Von Ruden. The court found there was no showing by the State that allowing Von Ruden to contact his attorney would have materially interfered with the test. The State moved for reconsideration arguing the booking video was already in evidence. In reconsidering, the court noted the following undisputed facts:

On March 15, 2016, at approximately 8:28 p.m. Beulah police officer Ben Newman made a traffic stop of Von Ruden's vehicle. Officer Newman read the implied consent advisory to Von Ruden and administered a preliminary breath test. Von Ruden was subsequently arrested for DUI and transported to the detention center in Stanton, ND. Von Ruden was again read the implied consent advisory. Although Officer Newman had to ask Von Ruden a number of times whether he would submit to a chemical test, Von Ruden eventually gave an affirmative reply.

The first test sequence was begun at 9:22 p.m. Von Ruden provided [a] deficient sample and Officer Newman decided to not give the second portion of the test. After halting the first test, Officer Newman began a second testing procedure at 9:41 p.m. In between the first and second blows on the second testing sequence, Von Ruden stated that he wanted his phone to call an attorney. Officer Newman told him that he could call his attorney after the test was completed. The test was completed and indicated that Von Ruden had a BAC of .198.

Based on these facts, the district court granted the State's request for reconsideration, reversed its prior decision, and denied Von Ruden's motion to suppress. Von Ruden subsequently entered a conditional guilty plea to the charge of driving a motor vehicle while under the influence of intoxicating liquor.

## II

[¶4] Von Ruden argues Officer Newman did not administer either Intoxilyzer breath test sequence in accordance with the approved method. He argues by manually aborting the first test sequence after receiving a deficient sample, Officer Newman denied him the opportunity to provide a second sample during the first test sequence. Von Ruden also argues Officer Newman did not follow the approved method when he failed to wait twenty minutes in between the first and the second test sequences. Therefore, Von Ruden contends the results from both test sequences should be excluded from evidence.

[¶5] "When reviewing a district court's decision on a motion to suppress, this Court defers to the district court's findings of fact, and conflicts in testimony are resolved in favor of affirmance, as we recognize the district court is in a 'superior position to assess credibility of witnesses and weigh the evidence.'" *City of Dickinson v. Schank*, 2017 ND 81, ¶ 6, 892 N.W.2d 593 (quoting *State v. Gasal*, 2015 ND 43, ¶ 6, 859 N.W.2d 914). "This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence." *Schank*, 2017 ND 81, ¶ 6, 892 N.W.2d 593 (citing *City of Devils Lake v. Grove*, 2008 ND 155, ¶ 7, 755 N.W.2d 485).

[¶6] Section 39-20-07(5), N.D.C.C., governs the admissibility of an Intoxilyzer test, stating in pertinent part:

The results of the chemical analysis must be received in evidence <u>when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods</u> and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee.

(Emphasis added.) The purpose of this section is to ease the requirements for the admissibility of the chemical test results while assuring the test, on which the results are based, is fairly administered. *See City of Bismarck v. Bosch*, 2005 ND 12, ¶ 6, 691 N.W.2d 260. This Court has said "fair administration" of an Intoxilyzer test may be established by proof that the approved method for conducting the test has been "scrupulously followed." *See State v. Stroh*, 2011 ND 139, ¶ 4, 800 N.W.2d 276; *Steinmeyer v. Dep't of Transp.*, 2009 ND 126, ¶ 9, 768 N.W.2d 491. "However, 'scrupulous' compliance does not mean 'hypertechnical' compliance." *Stroh*, 2011 ND 139, ¶ 4, 800 N.W.2d 276.

## A

[¶7] Von Ruden argues Officer Newman did not perform the first Intoxilyzer breath test sequence in accordance with the approved method by manually aborting the test after Von Ruden provided a deficient sample. The approved method states:

If any breath sample is determined to be deficient, meaning the subject did not provide a breath sample or did not provide an adequate breath sample, the instrument will print "*Subject Test" fol-

lowed by "#.###*" with the highest alcohol concentration obtained during the test. The asterisk (*) cross-references a message printed below on the test record.

1. If any one of the two breath samples rendered by the subject is deficient or the subject does not provide one of the two samples, the single test obtained shall constitute a valid test and the three digits for that test will be reported as the breath alcohol concentration.

2. If both breath samples rendered by the subject are deficient, the test is still valid, but with deficient breath samples. The subject either refused or could not provide a sample. This is not an acceptable breath alcohol result.

   a. If the operator can determine the deficient breath samples are not because the subject refused to provide samples, but are because of the inability of the subject to provide the samples, an alternative test for the subject needs to be obtained for evidentiary purposes.

*Approved Method to Conduct Breath Tests with the Intoxilyzer 8000*, dated April 19, 2012.

[¶8] In support of his argument Von Ruden relies on this Court's decision in *Keller v. N.D. Dep't of Transp.*, 2015 ND 81, ¶ 11, 861 N.W.2d 768. In *Keller*, the district court affirmed a North Dakota Department of Transportation hearing officer's decision to suspend Keller's driving privileges for one year. *Keller*, 2015 ND 81, ¶ 1, 861 N.W.2d 768. After providing an adequate breath sample, the officer testified Keller either would not or could not provide a second adequate breath sample. *Id.* at ¶ 2. The hearing officer relied on the first adequate breath sample and suspended Keller's driving privileges for one year. *Id.* at ¶ 3. Keller argued the officer failed

to follow the approved method in administering the Intoxilyzer test. *Id.* at ¶ 4. The officer testified:

> For the second test he attempted to blow once, then he attempted to blow again and then he decided he was done. He wasn't trying to not cooperate, but he wasn't going to blow anymore. At that point in time, I should have let the machine time out. Without thinking about it, I hit the end test button.

*Id.* at ¶ 10. This Court looked to the approved method to determine the appropriate steps an officer must take when receiving a deficient sample:

> If the subject does not blow with sufficient pressure and/or time to achieve an adequate breath sample, "Please Blow Until Tone Stops" will reappear with intermittent beeps. The subject has another three minutes to provide an adequate breath sample.

*Id.* In reversing the district court's judgment, this Court concluded:

> [T]he officer did not wait to allow Keller the additional three minutes to provide an adequate second breath sample. Instead, the officer manually aborted the Intoxilyzer test sequence before the machine timed itself out. Consequently, the record does not show the notations for a deficient breath sample which are identified in the approved method's test interpretation section. In the findings of fact section, the hearing officer stated the "Intoxilyzer testing was done in accordance with the state toxicologist's approved method." However, the approved method is silent regarding a premature abortion of the testing sequence, and the Department did not offer expert testimony to address the effect of manually aborting the test before the machine timed out. We cannot say, without expert advice, that the officer's premature termination of the testing sequence did

not affect the test results; thus, we conclude the agency's finding of fact that the testing was done in accordance with the approved method is not supported by a preponderance of the evidence.

*Id.*

[¶9] Here, the State claims the district court properly found the "acceptable" breath test result from the second test sequence was administered in accordance with the approved method. Unlike *Keller*, the State does not argue the results of the first test sequence Officer Newman manually aborted should be admissible. The State argues manually aborting the first test sequence before obtaining the second sample does not invalidate the results of the subsequent test sequence. The State only relies on the results of the second test sequence which, reviewed independently of the first aborted test sequence, was administered in accordance with the approved method. Von Ruden argues because the officer did not follow the approved method in the first sequence, evidence from both tests is inadmissible. We disagree.

[¶10] This Court's decision in *Keller* turned on the reliability of the results from an aborted test sequence. *Keller*, at ¶ 10. This Court was not faced with the question of whether a manually aborted test sequence would call into question the reliability of the results of a subsequent test sequence completed in accordance with the approved method. Here, during the first test sequence Officer Newman received a deficient breath sample before he decided to manually abort the first test sequence. Officer Newman then proceeded with the second, independent test sequence. The approved method is silent regarding an officer's ability to administer a second test sequence after manually aborting the first test sequence because the first sample was deficient. The approved method does, however, consider the possibility of two defi-

cient samples and in those instances requires an alternative test for evidentiary purposes. Officer Newman's actions had the effect of treating the first testing sequence as two deficient samples, and he administered the subsequent alternative test. There may be instances where manually aborting a test sequence could have an effect on the testing process. Based on the facts presented, Officer Newman's decision to manually abort the first test sequence could not have affected the results of the second independent test sequence administered less than five minutes later. Von Ruden's approach would require this Court to demand "hypertechnical" compliance with the approved method, and we decline to do so.

### B

[¶11] Von Ruden argues the results of the second Intoxilyzer test sequence should be suppressed because Officer Newman failed to wait twenty minutes after the first test sequence before administering it. The approved method states "[b]efore proceeding, the operator shall ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample." *Approved Method to Conduct Breath Tests with the Intoxilyzer 8000*, dated April 19, 2012. The operator's manual for the Intoxilyzer 8000 gives the reason for the twenty minute wait:

> The mucous lining of the mouth cavity and nasal passages store alcohol for 5-15 minutes after a person consumes an alcoholic beverage. Normal absorption eliminates residual mouth alcohol within 20 minutes. Therefore, ascertain that the subject has not had anything to eat, drink, or smoke for 20 minutes before performing an evidentiary test.

*Chemical Test Operator Manual*, October 2013. If the Intoxilyzer detects residual

mouth alcohol, the display on the Intoxilyzer states "Invalid Sample." *Id.* If "Invalid Sample" appears on the Intoxilyzer's display, "[t]he operator shall wait another 20 minutes and ensure the subject has had nothing to eat, drink, or smoke before repeating the Intoxilyzer[ ] 8000 test." *Approved Method to Conduct Breath Tests with the Intoxilyzer 8000,* dated April 19, 2012.

[¶12] Officer Newman aborted the first test sequence after a deficient sample for failing to provide an adequate breath sample, not an invalid sample. Officer Newman then began the second test sequence without waiting an additional twenty minutes. However, according to the "Intoxilyzer Test Record and Checklist" Officer Newman observed Von Ruden for twenty minutes before beginning the first testing sequence. The approved method is silent regarding an officer's ability to perform a subsequent test sequence after manually aborting the initial test sequence based on the receipt of a deficient sample, or how long the officer must wait before beginning the subsequent test sequence.

[¶13] The purpose of the twenty minute waiting period before beginning either the first test sequence or a subsequent test sequence after receiving an invalid sample is to allow the subject's body to absorb any remaining residual mouth alcohol. Officer Newman observed Von Ruden throughout the entire testing process, and the deficient sample in the first testing sequence did not alert Officer Newman to any presence of residual mouth alcohol. While Officer Newman may not have waited twenty minutes in between the first and second test sequences, by observing Von Ruden throughout the entire process Officer Newman ascertained Von Ruden did not have anything to eat, drink, or smoke twenty minutes before administering the second test sequence, and Officer Newman

scrupulously followed the approved method in administering the second test sequence. Therefore, the district court did not err in admitting evidence of the second test sequence, there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence.

### III

[¶14] Von Ruden argues Officer Newman deprived him of his limited statutory right to counsel by denying his request to speak with an attorney in between the first and second "blows" of the second test sequence. Section 29-05-20, N.D.C.C., provides an arrestee a limited statutory right to consult with counsel before deciding whether to submit to chemical testing. This Court's precedent defining this limited statutory right is well-established:

An arrested person who asks to speak with an attorney before taking a chemical test must be given a reasonable opportunity to do so if it does not materially interfere with the test administration. *Kuntz v. State Highway Comm'r,* 405 N.W.2d 285, 290 (N.D. 1987). The reasonableness of the opportunity objectively depends on the totality of the circumstances, rather than the subjective beliefs of the accused or police. *City of Mandan v. Jewett,* 517 N.W.2d 640, 642 (N.D. 1994). The accused person's right of consultation with an attorney before submitting to a chemical test is a statutory right, not a constitutional right. *Kuntz*[,] at 289; *see also* N.D.C.C. § 29-05-20 (providing that an attorney who requests to visit with the arrested person may have such visitation). This limited right of consultation must be balanced against the need for an accurate and timely chemical test. *State v. Sadek,* 552 N.W.2d 71, 73 (N.D. 1996).

*Schank*, 2017 ND 81, ¶ 7, 892 N.W.2d 593 (quoting *State v. Berger*, 2001 ND 44, ¶ 17, 623 N.W.2d 25). "The appropriate inquiry is whether the police afforded [an arrestee] a reasonable opportunity to consult with counsel in a meaningful way." *Schank*, at ¶ 7 (citing *City of Mandan v. Jewett*, 517 N.W.2d 640, 642 (N.D. 1994)). Whether a person has been given a reasonable opportunity to consult with an attorney is a mixed question of law and fact, which is reviewed under a de novo standard. *Schank*, at ¶ 7.

[¶15] Von Ruden moved the district court to suppress evidence related to the second test sequence claiming Officer Newman failed to provide him a reasonable opportunity to speak with an attorney in between the first and second "blows." In its order denying Von Ruden's motion to suppress, the district court found Officer Newman did not violate Von Ruden's limited statutory right to counsel:

> In this case, Von Ruden did not ask to consult an attorney before submitting to the Intoxilyzer test as required in *Kuntz*. Von Ruden asked to contact his attorney while the test was in progress. The reference to an attorney occurs approximately 27:27 into the booking video. Von Ruden requested the opportunity to speak to an attorney between the first and second "blows" of the second testing sequence. Stopping the test at that point would have materially interfered with the administration of the test and resulted in a second invalid test. Under these circumstances, Von Ruden was not improperly denied his statutory right to counsel.

We agree with the district court. The record reflects a time period of approximately seven minutes between the first "blow" and the second "blow." While an arrestee has the right to consult an attorney prior to submitting to a chemical test, it is not an unlimited right. The arresting officer must provide the arrestee a reasonable opportunity to speak with an attorney, but that opportunity must not materially interfere with the test administration. The approved method requires the arresting officer to collect two samples from the arrestee before the results may be used as evidence. Allowing an arrestee to stop the test prior to submitting the second sample in a test sequence would invalidate the entire test sequence and materially interfere with the test administration. Therefore, we conclude the district court did not err in finding Officer Newman did not violate Von Ruden's limited statutory right to counsel.

## IV

[¶16] We have considered the remaining issues and arguments raised by Von Ruden and find them to be either unnecessary to our decision or without merit. We affirm the district court's judgment.

[¶17] Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.