# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 37

Cailin Leann Gackle,                                    Petitioner and Appellant

     v.

North Dakota Department
of Transportation,                                    Respondent and Appellee

## No. 20240247

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Stacy J. Louser, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice.

Chad R. McCabe, Bismarck, N.D., for petitioner and appellant.

Michael T. Pitcher, Assistant Attorney General, Bismarck, N.D., for respondent and appellee.

**Tufte, Justice.**

[¶1]  Cailin Leann Gackle appeals from a district court judgment affirming an administrative hearing officer's decision to suspend Gackle's driving privileges for 365 days for driving under the influence of alcohol. Gackle argues that the North Dakota Department of Transportation failed to establish the chemical breath test was fairly administered in compliance with the approved method, which requires waiting another 20 minutes after a first test is invalidated for too great a difference between the two samples. We conclude the Department failed to establish fair administration of the test because the required 20-minute wait must be completed before beginning the next test. We reverse and remand to the Department for reinstatement of Gackle's driving privileges.

I

[¶2]  In February 2024, Officer Cullen Hall of the Minot Police Department arrested Gackle for driving under the influence of alcohol. At the police department, Officer Hall conducted two separate breath test sequences using the Intoxilyzer 8000, Breath Alcohol Testing Instrument.

[¶3]  The events critical to the issue on appeal occurred in the following sequence: Officer Hall began the first breath test sequence at 2:29 a.m. Gackle provided her first breath sample at 2:30 a.m. and her second sample at 2:35 a.m. Because the difference between the two samples exceeded 0.020 AC, the Intoxilyzer displayed "Difference Too Great," invalidating the test. Officer Hall began a second test sequence at 2:54 a.m. Gackle provided her first sample at 2:55 a.m. and her second sample at 3:01 a.m. Following the North Dakota Approved Method to Conduct Breath Tests with the Intoxilyzer 8000, Officer Hall reported the lower of the samples—0.159 AC, obtained at 3:01 a.m.—as Gackle's alcohol concentration.

[¶4]  Officer Hall issued Gackle a Report and Notice, informing Gackle of the Department's intent to suspend her driving privileges. Gackle requested an administrative hearing, which was held on March 25, 2024. At the hearing,

Gackle objected to admission of the Department's Exhibit 1, which included the Notice and Hearing and Intoxilyzer test records.

[¶5]   Gackle argued the exhibit was not admissible because Officer Hall did not comply with the approved method's timing requirements. The approved method requires that after receiving a "Difference Too Great" result, the operator "shall wait another 20 minutes and ensure the subject has had nothing to eat, drink, or smoke before repeating the Intoxilyzer 8000 test." Gackle argued that because only 18 minutes elapsed between the end of the first test sequence (2:36 a.m.) and the start of the second test sequence (2:54 a.m.), Officer Hall failed to comply with this requirement. The hearing officer overruled Gackle's objection, admitted Exhibit 1, and ultimately suspended Gackle's driving privileges for 365 days. The Department found that "Exhibit 1 prima facie establishes the test was administered in accordance with the approved method" and credited Officer Hall's testimony about obtaining "a second twenty-minute deprivation period before the second testing sequence." Gackle appealed to the district court, which affirmed the Department's decision.

II

[¶6]   Gackle argues the Department failed to show fair administration of the breath test because Officer Hall deviated from the approved method and the Department did not offer expert testimony to establish fair administration of the test despite this deviation. The Department argues the hearing officer's finding that Officer Hall fairly administered Gackle's breath test in scrupulous compliance with the approved method is supported by the weight of the evidence. The Department also argues that the approved method does not require an Intoxilyzer operator to wait 20 minutes after termination of an invalid test before beginning the next test sequence. Under this view, the requirement is satisfied when twenty minutes elapse between taking the second breath sample of an invalid first test and taking the first breath sample of a second test.

A

[¶7]   Chapter 28-32, N.D.C.C., governs the review of a decision to suspend driving privileges. *Kastet v. Henke*, 2020 ND 91, ¶¶ 6, 14, 942 N.W.2d 453. "[O]n

2

appeal from the district court, this Court reviews the agency's decision." *Bayles v. N.D. Dep't of Transp.*, 2015 ND 298, ¶ 5, 872 N.W.2d 626. This Court gives deference to the agency's factual findings and will not substitute its own judgment for that of the agency. *Kastet*, 2020 ND 91, ¶ 6. We determine whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. *Id.* "Questions of law are fully reviewable on appeal." *Id.*

[¶8]   This Court must affirm the Department's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of [N.D.C.C. ch. 28-32] have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46. "The admissibility of evidence at an adjudicative hearing before an administrative agency is governed by the North Dakota Rules of Evidence. A hearing officer has broad discretion in controlling the admission of evidence at the hearing and the hearing officer's decision to admit or exclude evidence will only be reversed on appeal when there is an abuse of discretion." *Jangula v. N.D. Dep't of Transp.*, 2016 ND 116, ¶ 8, 881 N.W.2d 639.

B

[¶9]   The Department has the burden to prove that an Intoxilyzer test was fairly administered. *Ringsaker v. Dir., N.D. Dep't of Transp.*, 1999 ND 127, ¶ 11, 596

3

N.W.2d 328. Section 39-20-07, N.D.C.C., provides an "evidentiary shortcut" allowing admissibility of Intoxilyzer test records. *Hanson v. N.D. Dep't of Transp.*, 2022 ND 135, ¶ 6, 977 N.W.2d 312.

> The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee.

N.D.C.C. § 39-20-07(5). "The purpose of N.D.C.C. § 39-20-07 is to ease the requirements for the admissibility of chemical test results while assuring that the test upon which the results are based is fairly administered." *City of Bismarck v. Bosch*, 2005 ND 12, ¶ 6, 691 N.W.2d 260. "Because the statute permits admission of such evidence without expert witness testimony to establish accuracy and reliability, all the requirements of the statute must be scrupulously met to ensure a uniform basis of testing throughout the State and fair administration." *Ringsaker*, 1999 ND 127, ¶ 8.

[¶10] If an Intoxilyzer operator deviates from the approved method, the Department can show fair administration of an Intoxilyzer test through expert testimony:

> Fair administration of an Intoxilyzer test may be established by proof that the method approved by the State Toxicologist for conducting the test has been scrupulously followed, but "scrupulous" compliance does not mean "hypertechnical" compliance. If the State fails to establish compliance with those directions for sample collection which go to the scientific accuracy and reliability of the test, the State must prove fair administration of the test through expert testimony. When there is a deviation from the approved method that affects the test's scientific accuracy or reliability and there is no expert witness testimony on the effect, the test has not been fairly administered.

*Keller v. N.D. Dep't of Transp.*, 2015 ND 81, ¶ 8, 861 N.W.2d 768 (cleaned up).

[¶11] We have held the Department failed to show an Intoxilyzer test was fairly administered when an officer's deviation from the approved method was such that the Court "cannot say, without expert advice, that the officer's [deviation from the approved method] did not affect the test results." *Keller*, 2015 ND 81, ¶ 10. In *Keller*, the officer prematurely terminated the Intoxilyzer test sequence before the machine timed out, because Keller provided only one adequate breath sample and either would not or could not provide a second breath sample. *Id.* ¶ 2. The Department argued that, because a reasoning mind could have inferred that the Intoxilyzer would have timed out without a second breath sample, the single adequate breath sample constituted a valid test in compliance with the approved method. We rejected this argument, holding:

> Because the officer deviated from the Approved Method to Conduct Breath Tests which may have affected the scientific accuracy or reliability of the test, and there was no expert testimony on the effect, if any, of the deviation, the Department failed to show that the test was "fairly administered." We conclude the hearing officer should not have admitted Keller's Intoxilyzer test record into evidence.

*Id.* ¶ 11. *See also Ringsaker*, 1999 ND 127, ¶ 14 (Intoxilyzer test not fairly administered when incorrect testing date was printed on report and there was no expert testimony on effect of deviation); *Wagner v. Backes*, 470 N.W.2d 598, 600–01 (N.D. 1991) (Intoxilyzer test not fairly administered when officer did not insert card on which results are recorded at required time and there was no expert testimony on effect of deviation); *Price v. N.D. Dep't of Transp. Dir.*, 469 N.W.2d 560, 561–62 (N.D. 1991) (Intoxilyzer test not fairly administered when officer did not perform procedures in sequence specified by approved method and there was no expert testimony on effect of deviation).

[¶12] This Court has emphasized that "not all deviations from an approved method are fatal." *Wagner*, 470 N.W.2d at 600. "When the deviation from the approved method could not have affected the reliability or accuracy of the test results, the deviation does not render the test results inadmissible. We have never held that expert testimony is necessary to explain what is readily observable to the ordinary person." *Keller*, 2015 ND 81, ¶ 8. We have upheld license suspensions, despite deviations from the approved method, "when the

deviation involved some clerical or ministerial aspect of an approved method which could not have affected the test results." *Id.* (citing *Schwind v. Dir., N.D. Dep't of Transp.*, 462 N.W.2d 147, 152 (N.D. 1990) (accuracy of results not affected when deputy, instead of nurse, inspected and certified that blood sample's seal was intact); *Heinrich v. N.D. State Hwy. Comm'r*, 449 N.W.2d 587, 589 (N.D. 1989) (accuracy of results not affected when, after administering the test, officer corrected handwritten information on testing form upon realizing he had erroneously written standard solution number in place of simulator number); *Schense v. Hjelle*, 386 N.W.2d 888, 891 (N.D. 1986) (validity of results not affected by discrepancy between Intoxilyzer's serial number and serial number on test record when officer testified he had used that specific Intoxilyzer)). *See also Koenig v. N.D. Dep't of Transp.*, 2005 ND 95, ¶¶ 14–16, 696 N.W.2d 534 (accuracy of results not affected by printer malfunction resulting in officer's failure to submit printout of invalid first breath test record).

C

[¶13] The Department argues the weight of the evidence supports the hearing officer's finding that Gackle's breath test was fairly administered in compliance with the approved method. The Department argues it met its evidentiary burden because the hearing officer found that the Intoxilyzer test record "prima facie establishes the test was administered in accordance with the approved method and was not impeached," and "Officer Hall's testimony, including his testimony about obtaining a second twenty-minute deprivation period before the second testing sequence, was [ . . . ] credible and not impeached."

[¶14] The start and end points for the 20-minute waiting period required by the approved method in this context is an issue of first impression before the Court. The approved method provides the following instructions for when a breath test has the result of "Difference Too Great":

> If the numerical difference between "Subject Test 1" and "Subject Test 2" is greater than 0.020, "Difference Too Great" will be printed on the test record and the test is invalid. The operator shall wait another 20 minutes and ensure the subject has had nothing to eat, drink, or smoke before repeating the Intoxilyzer 8000 test.

The Department argues that the 20-minute waiting period is satisfied when there are 20 minutes between obtaining the second breath sample of the invalid first test and obtaining the first breath sample of the second test.

[¶15] The Department relies on *Phipps v. N.D. Dep't of Transp.*, 2002 ND 112, 646 N.W.2d 704, in support of its argument that the timing requirements of the approved method are measured by the times the breath samples are collected. In *Phipps*, we held that a chemical test is performed when it is preserved for analysis (i.e., the time at which the sample is collected). *Phipps*, ¶ 14 (citing *Keepseagle v. Backes*, 454 N.W.2d 312 (N.D. 1990)). In both *Phipps* and *Keepseagle*, however, the issue before the Court was whether a chemical test had been performed "within two hours after the driving or being in actual physical control of a vehicle." N.D.C.C. § 39-20-03.1; *Phipps*, ¶ 12; *Keepseagle*, 454 N.W.2d at 315–16. Here, the Court must decide whether an operator has waited the required 20 minutes "before repeating the Intoxilyzer 8000 test" if there are 20 minutes between the times at which the relevant samples are collected.

[¶16] Although the question presented here is novel, we have discussed the 20-minute waiting requirement under other provisions of the approved method. In *State v. Von Ruden*, 2017 ND 185, 900 N.W.2d 58, the officer manually aborted the first Intoxilyzer test after the machine indicated Von Ruden had given a "deficient sample." *Id.* ¶ 3. The officer began the first test sequence at 9:22 p.m.; Von Ruden provided a deficient sample, and the officer manually aborted the first test sequence. *Id.* The officer began the second test sequence at 9:41 p.m. *Id.* Because "[t]he approved method is silent regarding an officer's ability to perform a subsequent test sequence after manually aborting the initial test sequence based on the receipt of a deficient sample, or how long the officer must wait before beginning the subsequent test sequence," the Court had to determine whether the test was fairly administered even though the officer did not wait 20 minutes between the test sequences. *Id.* ¶ 12.

[¶17] The Court considered two provisions of the approved method in addressing Von Ruden's argument that the results of the second sequence should be suppressed: (1) the 20-minute deprivation period required before the test may

7

be administered[1]; and (2) the second 20-minute waiting period required if there is an "Invalid Sample" result[2]:

> The purpose of the twenty minute waiting period before beginning either the first test sequence or a subsequent test sequence after receiving an invalid sample is to allow the subject's body to absorb any remaining residual mouth alcohol. [The officer] observed Von Ruden throughout the entire testing process, and the deficient sample in the first testing sequence did not alert [the officer] to any presence of residual mouth alcohol. While [the officer] may not have waited twenty minutes in between the first and second test sequences, by observing Von Ruden throughout the entire process [the officer] ascertained Von Ruden did not have anything to eat, drink, or smoke twenty minutes before administering the second test sequence, and [the officer] scrupulously followed the approved method in administering the second test sequence.

*Von Ruden*, 2017 ND 185, ¶ 13.

[¶18] Here, unlike in *Von Ruden*, the approved method provides express direction on how the Intoxilyzer operator should proceed upon receiving a "Difference Too Great" result: "The operator shall wait another 20 minutes and ensure the subject has had nothing to eat, drink, or smoke *before repeating the Intoxilyzer 8000 test*" (emphasis added). Gackle's invalid first test ended at 2:36 a.m.; Officer Hall began her second test at 2:54 a.m. The issue before the Court is whether "before repeating the Intoxilyzer 8000 test" required Officer Hall to wait 20 minutes before beginning the second test sequence, or 20 minutes between the times at which relevant samples were collected.

---

[1] Step 5 of the Intoxilyzer 8000 testing procedure provides: "5. '20 Minute Wait?' appears on the display. Before proceeding, the operator shall ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample. Answer the question with either 'N' (No) or 'Y' (Yes) and press Enter. If 'N' is entered the instrument will not proceed."

[2] "If 'Invalid Sample' is noted on the display and/or test record the test is invalid. *Invalid Sample* indicates that residual mouth alcohol was detected by the Intoxilyzer 8000. The instrument will abort the test. The operator shall wait another 20 minutes and ensure the subject has had nothing to eat, drink, or smoke before repeating the Intoxilyzer 8000 test."

[¶19] Resolution of this issue requires interpretation of "Intoxilyzer 8000 test" as it is used in "before repeating the Intoxilyzer 8000 test." If "Intoxilyzer 8000 test" means the collection of a breath sample specifically, then an Intoxilyzer operator need not wait 20 minutes after termination of an invalid breath test before beginning the subsequent testing sequence. Under this interpretation, the operator would only need to make sure that there were 20 minutes between collection of the second sample of the first test and the first sample of the second test. Alternatively, if "Intoxilyzer 8000 test" refers to the entire Intoxilyzer 8000 test sequence, then the operator must wait 20 minutes from the time the invalid first test terminates before beginning the second test sequence.

[¶20] Reading the approved method as a whole, we conclude "before repeating the Intoxilyzer 8000 test" uses "Intoxilyzer 8000 test" to refer to the test sequence and not the specific step of collecting a breath sample. The approved method is divided into several sections: Scope; Background Information; Principle; Instrument Preparation to Begin a Test; Testing Procedure; Interpretation of Test; and Further Information. In the title and body of each section, the term "test," when used unmodified, refers generally to the Intoxilyzer test sequence as a whole. The title of the approved method and the Scope section both describe the document as a whole as encompassing "Breath tests with the Intoxilyzer 8000." Under subsection A of Testing Procedure, the approved method provides: "To perform a test:", followed by the individual steps of the full testing procedure.

[¶21] Further, where "test" refers to a specific step of the test sequence, "test" is modified to indicate that specificity (e.g., subsection B of Testing Procedure provides: "The North Dakota Intoxilyzer 8000 test sequence must include these tests in the following order: Diagnostic, room air, subject test, room air, standard gas, room air, subject test, and room air."). The testing procedure includes two steps at which breath samples are collected; the approved method refers in both of these steps to "[t]he collection of an adequate breath sample." The approved method then provides: "The results of adequate breath samples will be printed as 'Subject [T]est 1' and/or 'Subject Test 2.'" Nowhere in the approved method is "Intoxilyzer 8000 test" or "Breath Tests with the Intoxilyzer 8000" used to reference the specific steps at which breath samples are collected.

9

[¶22] The Intoxilyzer 8000 testing procedure set out in the approved method includes numerous steps. We interpret "before repeating the Intoxilyzer 8000 test" consistent with the language of the approved method as a whole to require the operator to wait 20 minutes before beginning a subsequent test sequence. Contrary to the hearing officer's finding, a test record showing a period of time less than 20 minutes between test sequences cannot "prima facie establish[] the test was administered in accordance with the approved method" because the approved method expressly requires an operator to wait 20 minutes before repeating the test sequence.

[¶23] Although Officer Hall testified that he "waited for another 20-minute deprivation period" after Gackle's invalid first breath test, his testimony did not address the timestamps on the test record showing only 18 minutes had elapsed between the end of the invalid first test and his initiation of the second test. *See Ebach v. N.D. Dep't of Transp.*, 2019 ND 80, 924 N.W.2d 105 (test fairly administered despite timestamps on test record indicating less than 20 minutes had elapsed because Intoxilyzer machine's clock was running behind and officer testified that he used his watch to determine 20-minute deprivation period). This is not the type of "clerical or ministerial aspect of an approved method which could not have affected the tests results." *Keller*, 2015 ND 81, ¶ 8. We do not speculate about whether a given deviation from the approved method affected the accuracy of a breath test; we determine only whether the deviation is the kind that may have affected the scientific accuracy or reliability of the test.

[¶24] Because failure to wait 20 minutes before beginning the second test sequence is the type of deviation from the approved method which may have affected the scientific accuracy or reliability of the test, and there was no expert testimony on the likely effect of the deviation, the Department failed to show the test was fairly administered. The hearing officer should not have admitted Gackle's Intoxilyzer test record into evidence.

## III

[¶25] We reverse and remand to the Department for reinstatement of Gackle's driving privileges.

[¶26] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr